UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
SUZETTE DE SOUZA, individually and on behalf of all others
similarly situated,

<div align="center">Plaintiff,</div>

<div align="right">Case No. 25-cv-01222-RA</div>

<div align="center">-against-</div>

THE STATE OF NEW YORK; NEW YORK STATE OFFICE FOR
PEOPLE WITH DEVELOPMENTAL DISABILITIES; WILLOW
BAER, Acting Commissioner (in her official capacity);
STEPHANIE THOMAS, Designee for Reasonable Accommodations
(in her official and personal capacities); TERESA MEADOWS,
Treatment Team Leader at Cleveland IRA (in her official and
personal capacities); DAWN WILSON, Deputy Director of State
Operations (in her official
and personal capacities); SHERMARKE TANNIS, Regional
Director of Human Resources (in his official and personal
capacities); SHAUNA CARTER, Associate Director of Human
Resources (in her official and personal capacities); COREEN
PAYNE, Developmental Disabilities Program Specialist IV (in her
official personal capacities); and CIVIL SERVICE EMPLOYEES
ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO.

<div align="center">Defendants.</div>

------------------------------------------------------------------------------X

<div align="center">

## SUZETTE DE SOUZA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS TO STRIKE THE CLASS ALLEGATIONS

</div>

<div align="center">

HARWOOD LAW PLLC

Of Counsel:

Anthony Harwood

*Attorney for Plaintiff Suzette De Souza*
260 Madison Avenue, 16th Floor
New York, New York 10016
(212) 867-6820

</div>

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT.........................................................................................................................11

I.   STANDARDS GOVERNING A MOTION TO DISMISS..........................................11

II.  MS. DE SOUZA STATES VALID CLAIMS UNDER TITLE VII OF THE CIVIL
     RIGHTS ACT............................................................................................................. 12

     A.  Defendants Violated Title VII When They Denied Ms. De Souza Reasonable
         Accommodations for Her Religious Practice of Keeping the Sabbath. ............... 12

         1.  The seniority plan did not prevent defendants from granting an accommodation. .......... 13

         2.  Defendants have failed to show that their undue hardship defense is clear on
             the face of the complaint.................................................................................... 17

     B.  Ms. De Souza's Allegations of Disparate Treatment State a Valid Claim of Religious
         Discrimination in Violation of Title VII of the Civil Rights Act. ......................... 22

         1.  The derogatory statements Ms. Meadows made about Ms. De Souza's religion
             show a discriminatory motive................................................................................ 23

         2.  The favorable treatment of non-sabbath observers through selective enforcement
             of the seniority plan shows a discriminatory motive. ....................................... 24

         3.  The sequence of events shows a discriminatory motive.................................... 27

     C.  Ms. De Souza Pled a Valid Claim of Retaliation in Violation of Title VII. .......... 28

         1.  Ms. De Souza's request for sabbath accommodation was the direct cause of
             defendants' decision to fire her. ......................................................................... 29

         2.  The timing of plaintiff's termination shows defendants' retaliatory intent. .................... 29

III. MS. DE SOUZA STATES A VALID CLAIM UNDER SECTION 1983 FOR VIOLATIONS
     OF HER RIGHT TO FREE EXERCISE OF RELIGION AND EQUAL PROTECTION
     UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S.
     CONSTITUTION. ...................................................................................................... 30

     A.  Defendants Violated Ms. De Souza's Constitutional Rights When They Refused,
         Without a Compelling Reason, to Apply the Seniority Plan's Exceptions to
         Ms. De Souza.................................................................................................... 31

     B.  Defendants Fail to Meet the High Burden That Applies to Their Qualified Immunity
         Defense. ........................................................................................................... 34

IV. MS. DE SOUZA HAS PLED VALID CLAIMS UNDER THE HUMAN RIGHTS
     LAWS OF NEW YORK STATE AND NEW YORK CITY. ..................................... 37

     A.  This Court Has Jurisdiction over Ms. De Souza's State and City Claims. ........... 37

         1.  The election of remedies doctrine does not bar Ms. De Souza's claims.......................... 37

         2.  Sovereign immunity does not bar the state and city law claims against the individual
             defendants. ......................................................................................................... 37

i

3.  Supplemental jurisdiction over the State and Local claims is proper. .............................. 38

B.  Defendants Violated Ms. De Souza's Rights Under New York State and City
Human Rights Laws. .................................................................................................. 39

1.  Individual defendants are employers within the meaning of the NYSHRL and
NYCHRL. ........................................................................................................... 39

2.  The individual defendants also are liable for aiding and abetting violations of
New York State and City Law. ............................................................................ 42

V.  DEFENDANTS FAILED TO MEET THE HIGH BURDEN ON THEIR MOTION TO
STRIKE THE CLASS ALLEGATIONS. ................................................................. 42

A.  The Motion to Strike Is Premature Because Discovery Will Yield Evidence that the
Potential Class Members Are Sufficiently Numerous. ............................................. 43

B.  The Amended Complaint Alleges Commonality. ..................................................... 45

C.  The Amended Complaint Alleges Typicality. ........................................................... 47

CONCLUSION ................................................................................................................. 48

TABLE OF AUTHORITIES

Cases

*Aros v. United Rentals, Inc.*,
  3:10-CV-73 (JCH), 2011 WL 5238829 (D. Conn., Oct. 31, 2011).............................................. 42
*Adeyeye v. Heartland Sweeteners, LLC*,
  721 F.3d 444 (7th Cir. 2013)....................................................................................................... 36
*Anderson v. Creighton*,
  483 U.S. 635 (1987) .................................................................................................................... 35
*Antoine v. First Student, Inc.*,
  713 F.3d 824 (5th Cir. 2013).......................................................................................... 15, 17, 18, 19
*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)..................................................................................................................... 35
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 11, 42
*Baker v. The Home Depot*,
  445 F.3d 541 (2d Cir. 2006)......................................................................................................... 12
*Balint v. Carson City, Nevada*,
  180 F.3d 1047 (9th Cir. 1999)........................................................................................ 15, 16, 17, 18
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................... 11
*Borgese v. Baby Brezza Enter, LLC*,
  2021 WL 634722 (S.D.N.Y. Feb 18, 2021) ................................................................................ 43
*Bonaffini v. City Univ. of New York*,
  20-CV-5118, 2021 WL 2895688 (E.D.N.Y. July 9, 2021).......................................................... 42
*Brown v. Daikin Am. Inc.*,
  756 F.3d 219 (2d Cir. 2014)......................................................................................................... 26
*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010)......................................................................................................... 48
*Burgess v. New School* University,
  2024 WL 4149240 (S.D.N.Y. September 11, 2024) ............................................................... 39, 40
*Catzin v. Thank You & Good Luck Corp.*,
  899 F.3d 77 (2d Cir. 2018)........................................................................................................... 38
*Central Rabbinical Congress of U.S. & Canada v. New York City Department of Health &*
  *Mental Hygiene*,
  763 F.3d 183 (2d Cir. 2014)......................................................................................................... 34
*Chen v. Shanghai Café Deluxe, Inc.*,
  2023 WL 2625791 (S.D.N.Y. Mar. 24, 2023).............................................................................. 40
*Chenensky v. New York Life Ins. Co.*,
  2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011).............................................................................. 44
*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F.Supp.2d 113 (S.D.N.Y. 2012) ...................................................................................... 43, 44
*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ..................................................................................................................... 33
*Citibank, N.A. v. K-H Corp.*,
  968 F.2d 1489 (2d Cir. 1992)................................................................................................... 34, 35

*Cornejo v. Bell*,
  592 F.3d 121 (2d Cir. 2010)..................................................................................31
*Dawkins v. State University of New York at Cortland*,
  2024 WL 3377938 (N.D.N.Y. July 11, 2024) .......................................................41
*E.E.O.C. v. JBS USA*,
  339 F. Supp. 3d 1135 (D. Colo. 2018)...................................................................20
*E.E.O.C. v. Hacienda Hotel*,
  881 F.2d 1504, 1513 n.7 (9th Cir. 1989)................................................. 15, 17, 19
*E.E.O.C. v. Townley Eng'g & Mfg. Co.*,
  859 F.2d 610 (9th Cir. 1988)..................................................................................19
*E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*,
  279 F.3d 49 (1st Cir. 2002) .............................................................................. 12, 13
*Emilio v. Sprint Spectrum L.P.*,
  68 F.Supp.3d (S.D.N.Y. 2014) ..............................................................................43
*Everest Foods Inc. v. Cuomo*,
  585 F.Supp.3d 425 (S.D.N.Y 2022)......................................................................37
*Falchenberg v. New York State Dept. of Educ.*,
  338 Fed.Appx. 11 (2d. Cir. 2009)..........................................................................40
*Falcon v. City University of New York*,
  263 F.Supp.3d 416 (E.D.N.Y. 2017)......................................................................28
*Feingold v. New York*,
  366 F.3d 138 (2d Cir. 2004)...................................................................................41
*Fifth Ave. Presbyterian Church v. City of New York*,
  293 F.3d 570 (2d Cir. 2002)...................................................................................32
*Figueroa v. Kronos Inc.*,
  454 F.Supp.3d 772 (N.D. Ill. 2020) .......................................................................47
*Figueroa v. Rsquared NY, Inc.*,
  89 F. Supp. 3d 484 (S.D.N.Y. 2015) ......................................................................40
*Fulton v. City of Philadelphia*,
  593 U.S. 522 (2021) ......................................................................................... 32, 33
*Genas v. State of New York Dep't of Correctional Services*,
  75 F.3d 825 (2d Cir. 1996)....................................................................................36
*Goodman v. Lukens Steel Co.*,
  482 U.S. 656 (1987) ......................................................................................12, 21, 22
*Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*,
  252 F.3d 545 (C.A.2 (N.Y.), 2001) .................................................................. 29, 30
*Gorzynski v. JetBlue Airways Corp*,
  596 F.3d 93 (2d Cir. 2010).....................................................................................29
*Grant v. Bethlehem Steel Corp.*,
  622 F.2d 43 (2d Cir. 1980).....................................................................................30
*Greene v. City of New York*,
  2025 WL 949549 (S.D.N.Y. Mar. 28, 2025)..........................................................43
*Groff v. DeJoy*,
  680 U.S. 447 (2023) ..................................................................................18-21, 35, 36

*Hafer v. Melo,*
  502 U.S. 21 (1991) ........................................................................................................ 37
*Haley v. Teachers Insurance and Annuity Association of America,*
  37 F.Supp.2d 250 (S.D.N.Y. 2019) ................................................................................ 43
*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ...................................................................................................... 35
*Henry-Offor v. CUNY,*
  2012 WL 2317540 (S.D.N.Y. June 15, 2012) ............................................................... 41
*Huffman v. Brooklyn Coll.,*
  20-CV-6156, 2022 WL 43766 (E.D.N.Y. Jan. 5, 2022) ................................................ 41
*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  574 F.3d 29 (2d Cir. 2009) ............................................................................................ 47
*Jamil v. Sessions,*
  2017 WL 913601 (E.D.N.Y. 2017) ........................................................................... 15, 17
*Kassman v. KPMG LLP,*
  416 F.Supp.3d 252 (S.D.N.Y. 2018) .............................................................................. 45
*Kassman v. KPMG LLP,*
  925 F.Supp.2d 453 (S.D.N.Y. 2013) ................................................................... 45, 46, 47
*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022) ...................................................................................................... 33
*Kuck v. Danaher,*
  822 F. Supp. 2d 109 (D. Conn. 2011) ............................................................................ 38
*Lane v. Page,*
  272 F.R.D. 581 (D.N.M. 2011) ...................................................................................... 42
*Leibowitz v. Cornell Univ.,*
  584 F.3d 487 (2d Cir. 2009) .......................................................................................... 23
*Lenzi v. Systemax, Inc.,*
  944 F.3d 97 (2d Cir. 2019) ............................................................................................ 23
*Littlejohn v. City of N.Y.,*
  795 F.3d 297 (2d Cir. 2015) ..................................................................................... Passim
*Loren v. Levy,*
  2003 WL 1702004 (S.D.N.Y. Mar. 31, 2003) ................................................................ 38
*Malena v. Victoria's Secret Direct, LLC,*
  886 F.Supp.2d 349 (S.D.N.Y. 2012) ......................................................................... 39, 40
*Marisol A. v. Giuliani,*
  126 F.3d 372 (2d Cir. 1997) ...................................................................................... 47, 48
*McKenna v. Wright,*
  386 F.3d 432 (2d Cir. 2004) ...................................................................................... 11, 34
*Miller v. Hartford Fire Ins. Co.,*
  652 F.Supp.2d 220 (D. Conn. 2009) .............................................................................. 28
*Morin v. Tormey,*
  620 F.Supp.2d 353 (N.D.N.Y. 2009) ............................................................................. 37
*Nat'l Assoc. for the Advancement of Colored People v.* Merrill,
  939 F.3d 470 (2d Cir. 2019) ...................................................................................... 41, 42
*Nezaj v. PS450 Bar and Restaurant,*
  719 F.Supp.3d 318 (S.D.N.Y., 2024) ............................................................................. 40

*Opuku-Boateng v. State of Cal.,*
  95 F.3d 1461 (C.A.9 (Cal.), 1996) ........................................................................ 19, 20
*Ostrowski v. Atlantic Mutual Insurance Companies*,
  968 F.2d 171 (2d Cir. 1992) ....................................................................................... 28
*Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.,*
  506 U.S. 139 (1993) ................................................................................................... 41
*Rice v. U.S.F. Holland, Inc.*,
  410 F.Supp.2d 1301 (N.D.Ga. 2005) ................................................................... 15, 17
*Rizzo v. New York City Department of Sanitation*
  23-CV-7190, 2024 WL 327445 (S.D.N.Y. Jul. 2, 2024) ...................................... 12, 18
*Rojas v. Triborough Bridge & Tunnel Authority*,
  2020 WL 1910471 (S.D.N.Y. Apr. 17, 2020) .......................................................... 43
*Rowett v. ProSelect Insurance Company*,
  2025 WL 1664018 (S.D.N.Y. June 12, 2025) .......................................................... 39
*Sabir v. Williams*,
  52 F.4th 51 (2d Cir. 2022) ......................................................................................... 35
*Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
  659 F.3d 234 (2d Cir. 2011) ...................................................................................... 38
*Stolley v. Lockheed Martin Aeronautics Co.*,
  228 F. App'x 379 (5th Cir. 2007) ......................................................................... 17, 18
*Sturgill v. United Parcel Service, Inc.*,
  512 F.3d 1024 (8th Cir. 2008) ........................................................................ 15, 17, 20
*Sughrim v. New York*,
  503 F.Supp.3d 68 (S.D.N.Y. 2020) ..................................................................... 25, 47
*Sughrim v. New York*,
   690 F. Supp. 3d 355 (S.D.N.Y. 2023) ................................................................. 21, 33
*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ................................................................................................... 26
*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ......................................................................................... 47
*Talukder v. New York*,
  2023 WL 2752863 ....................................................................................................... 25
*Trans World Airlines, Inc. v. Hardison*,
  432 U.S. 63 (1977) ................................................................................ 13, 15, 16, 36
*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ............................................................................................... 34
*Tromblee v. New York,*
  19-CV-0638, 2021 WL 981847 (N.D.N.Y. Mar. 16, 2021) ...................................... 42
*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) ........................................................................ 11, 22, 23, 26
*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) .............................................................................................. 45, 46
*West v. Atkins*,
  487 U.S. 42 (1988) ..................................................................................................... 31
*Whidbee v. Garzarelli Food Specialties, Inc.*,
  223 F.3d 62 (2d Cir. 2000) ......................................................................................... 37

*Williams v. New York City Housing Authority*,
    61 F. 4th 55 (2d. Cir. 2023)....................................................................................... 41
*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ................................................................................................... 35

Statutes

28 U.S.C. § 1367....................................................................................................................... 38
42 U.S.C. § 1983............................................................................................................. 31, 32, 34
42 U.S.C. § 2000-2(c)(1) ........................................................................................................ 12

Rules

Federal Rule of Civil Procedure 8(a)(2) ................................................................................ 26
Federal Rule of Civil Procedure 12(b)(6) ................................................................. 11, 26, 33, 34
Federal Rule of Civil Procedure 12(f) ................................................................................ 42, 44

## PRELIMINARY STATEMENT

Free exercise of religion is one of our nation's most fundamental freedoms. Defendants violated this pillar of individual liberty when they refused to adjust the work schedule of plaintiff Suzette De Souza, so that she would not have to work on the sabbath, as her religious beliefs require.

Ms. De Souza was willing to work any other weekend shift, including the Saturday night shift, the overnight shift from Saturday night to Sunday morning, the Sunday day shift, the Sunday night shift, and the overnight shift from Sunday night to Monday morning. She also arranged for shift swaps with co-workers who volunteered to take her shifts on the sabbath. Any one of these accommodations would have allowed her to keep her sabbath, from sundown on Fridays through sundown on Saturdays, without imposing undue hardship on defendants or her co-workers. Nonetheless, defendants rejected these solutions.

Ms. De Souza stood by her religious principles, refused to work on the sabbath and filed a charge with the New York State Human Rights Commission. Defendants retaliated by firing her.

In their motion to dismiss, defendants claim that a seniority plan in a collective bargaining agreement bars them from accommodating Ms. De Souza's religious practice of keeping the sabbath. However, the seniority plan has several exceptions that would have allowed defendants to accommodate Ms. De Souza's religious beliefs. Defendants' refusal to accommodate Ms. De Souza despite those exceptions, violated Ms. De Souza's right to free exercise of religion under the First and Fourteenth Amendments to the United States Constitution, federal civil rights and employment laws, and the Human Rights Laws of New York State and New York City.

Defendants have not carried their burden on this motion to dismiss, because the complaint's allegations show that defendants could have accommodated Ms. De Souza's religious practice without undue hardship. Additionally, defendants failed to meet the heavy burden they bear on their defense of qualified immunity, because Ms. De Souza's right to a religious accommodation in these circumstances is clearly established in the case law, as discussed below.

Defendants also failed to meet their heavy burden on their motion to strike the class action allegations. Those allegations seek to vindicate the rights of all sabbath keepers who work for defendant New York State's Office of People with Developmental Disabilities ("OPWDD"), and those who have been denied job opportunities with OPWDD because of their need for sabbath accommodation. The class meets the numerosity requirement, because OPWDD has over 20,000 employees in New York State, many of whom are sabbath keepers. The class also meets the commonality requirement because defendants' incorrect interpretation of the collective bargaining agreement constitutes a uniform policy against accommodating sabbath keepers. That uniform policy violates the Constitution, federal and state law, because it forces employees and prospective employees to choose between following their religious practices and working for OPWDD.

## STATEMENT OF FACTS

Plaintiff Suzette De Souza worked for defendant OPWDD as a Direct Support Assistant at the Cleveland Individualized Residential Alternative (IRA), in Brooklyn, NY, from August 24, 2023, until OPWDD fired her on May 23, 2024, for refusing to work on her sabbath. (AC ¶ 31.)[1] As a Direct Support Assistant, she helped people with developmental disabilities. (AC ¶ 51.)

---

[1] References to the AC are to plaintiff's Amended Complaint.

2

Ms. De Souza is a Seventh Day Adventist. (AC ¶ 32.) As a Seventh Day Adventist, she holds the sincere religious belief that during the sabbath she must not engage in secular work and other secular activities, so that she may focus her activities on religious worship. *Id.* Seventh Day Adventists observe the sabbath from sunset on Friday until sunset on Saturday. *Id.*

Defendant OPWDD is an agency of the State of New York. (AC ¶ 33.) OPWDD is responsible for coordinating services for New Yorkers with developmental disabilities. (AC ¶ 35). It has over 20,000 employees in New York State. (AC ¶ 36.)

New York State has a collective bargaining agreement with defendant Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO ("CSEA"). (AC ¶ 47-49.) That collective bargaining agreement (the "CBA") applies to OPWDD as well as other New York State agencies. *Id.*

When Ms. De Souza interviewed for her position at OPWDD, she explained that she keeps the sabbath and cannot work from sundown on Friday through sundown on Saturday. (AC ¶ 52.) The OPWDD employee who conducted the interview told her that she could work out any scheduling accommodations with the house where she would be assigned. *Id.*

After receiving a job offer from OPWDD, Ms. De Souza met with a human resources representative and Faye Wilkie-Fields, the President of the Brooklyn Developmental Center Local of CSEA. (AC ¶ 54.) During that meeting, she asked about having the sabbath off from work. Ms. Wilkie-Fields said it was an HR issue, and she was "not going to court again." *Id.*

When Ms. De Souza started working for OPWDD, she was scheduled to work from Wednesday through Sunday, from 7:30 a.m. through 4 p.m. (AC ¶ 55.) This created a problem for her on the sabbath, because she was scheduled to work on Saturday, before sundown. (AC

3

¶ 55.)  This schedule did not create a problem on Fridays, because her working day ended before sundown.  *Id.*

On September 18, 2023, Ms. De Souza made a formal, written request for religious accommodation of her sabbath (the "September 18 request").  (AC ¶ 56.)  The request included a letter from her Pastor, at the Mt. Pisgah Seventh-Day Adventist Church.  *Id.*  The Pastor's letter stated that Ms. De Souza is a member of his church, and that, "Because of her religious beliefs, request is being made that she be exempted from work during sabbath hours (sunset Friday to sunset Saturday)."  *Id.*  Prior to her accommodation request, and for two weeks after, OPWDD did not schedule her to work during the sabbath.  *Id.* ¶ 57.

Defendant Stephanie Thomas, OPWDD's Designee for Reasonable Accommodations, processed Ms. De Souza's September 18 request.  *Id.* ¶ 58.  Defendant Thomas communicated about the September 18 request with defendant Teresa Meadows, the Individual Residential Alternatives Treatment Team Leader at Cleveland House.  *Id.* ¶ 59.  Ms. Meadows forwarded the September 18 request to her supervisor, defendant Coreen Payne, who was a Developmental Disabilities Program Specialist IV.  *Id.* ¶ 60.  Ms. Payne notified defendant Dawn Wilson about the September 18 request.  *Id.*  Ms. Wilson was Deputy Director of State Operations.  *Id.*

Defendant Wilson discussed the September 18 request with Defendant Shermarke Tannis, who was Regional Director of Human Resources.  *Id.* ¶ 61.  Mr. Tannis told Ms. Wilson that granting the September 18 request would violate the collective bargaining agreement with CSEA in two ways.  *Id.*  First, he said it would violate the seniority system governing the assignment of pass days.  *Id.*  Second, he said it would violate the requirement that OPWDD post vacancies.  *Id.*

OPWDD incorrectly treated Ms. De Souza's request for accommodation as a request to change her pass days to Friday and Saturday.  *Id.* ¶ 62.  Ms. De Souza did not request to have

4

pass days on Friday and Saturday. *Id.* ¶ 63. Ms. De Souza was ready, willing and able to work her regularly assigned day shift on Fridays, which ended at 4:00 p.m., prior to the beginning of the sabbath. *Id.* ¶ 64. Ms. De Souza was ready, willing and able to work on Saturday after sundown. *Id.* ¶ 65. The only accommodation she needed was to change her Saturday day shift to a shift to begin after sundown. *Id.*

The collective bargaining agreement provides for the assignment of shifts based on seniority with several exceptions. *Id.* ¶ 67. Section 44.2 states that "assignment of employees to work locations and shifts shall be made on the basis of seniority, subject to the operating needs of a department or agency or component thereof, or subject to an identification of differences between employees with respect to relevant factors concerning the employee's ability to perform the required duties and responsibilities satisfactorily." *Id.*

These provisions of Section 44.2 of the collective bargaining agreement gave OPWDD the ability to accommodate Ms. De Souza's sabbath in two ways. *Id.* ¶ 68. First, it could treat her request to accommodate her sabbath as necessary for OPWDD's "operating needs." *Id.* Second, it could treat her request to accommodate her sabbath as a factor affecting "the employee's ability to perform the required duties and responsibilities satisfactorily." *Id.*

The collective bargaining agreement also provides for the same two exceptions to the posting of vacancies. *Id.* ¶ 69. Article 45 governs the posting and bidding for job vacancies. Sections 45.1(b) and 45.2(c) state that such vacancies shall be filled on the basis of seniority, "subject to the operating needs of a department or agency or component thereof, or subject to an identification of differences between employees with respect to relevant factors concerning the employees' ability to perform the required duties and responsibilities satisfactorily." *Id.* Under sections 45.1(b) and 45.2(c) of the collective bargaining agreement, OPWDD could have

accommodated Ms. De Souza's religious sabbath observance as necessary for "operating needs," or as a factor affecting Ms. De Souza's "ability to perform." *Id.* ¶ 70.

On October 3, 2023, defendant Wilson contacted defendant CSEA to seek a waiver of the collective bargaining agreement so that OPWDD could offer an accommodation outside the seniority-based bidding process. *Id.* ¶ 76. In the email to CSEA, Ms. Wilson did not mention that Ms. De Souza was seeking a religious accommodation. *Id.* Nor did she explain that Ms. De Souza was only seeking to change her Saturday day shift to a Saturday night shift starting after sundown, or to a day or night shift on another day. *Id.* Instead, she incorrectly stated that the employee was requesting Friday and Saturday pass days. *Id.*

Although defendant Wilson's email to CSEA said she did not know the reason for the accommodation request, CSEA already knew that Ms. De Souza had requested sabbath accommodations because Ms. De Souza told Ms. Wilkie-Fields, CSEA's local President, that she wanted a sabbath accommodation when they met during the on boarding process. *Id.* ¶ 78. According to OPWDD's submission to the Human Rights Division, an unidentified person in Human Resources told Ms. Wilson that CSEA would not waive the seniority provisions. *Id.* ¶ 77.

On October 10, 2023, defendant Thomas emailed defendant Carter, Associate Director of Human Resources, to see if there were vacancies Ms. De Souza was qualified for that she could potentially transfer to or if she was on any Civil Service lists. *Id.* ¶ 91. On October 10, 2023, defendant Carter informed Ms. Thomas that Ms. De Souza was not on any Civil Service lists and was ineligible to transfer into another title. *Id.* ¶ 92.

On October 18, 2023, defendant Thomas notified Ms. De Souza that OPWDD denied Ms. De Souza's request for religious accommodation. *Id.* ¶ 93. In that notification, OPWDD claimed it "would require a change of pass days, which would violate the CSEA Collective Bargaining

6

Agreement's seniority provisions and the provisions on posting and bidding for assignments." *Id.* OPWDD claimed it was "unable to waive the provisions of the collective bargaining agreement." *Id.*

After receiving the formal denial of her request for an accommodation, Ms. De Souza arranged voluntary shift swaps with co-workers when she was assigned to work on the sabbath. *Id.* ¶ 94. Between August 24, 2023, and March 20, 2024, she successfully arranged four Saturday shift swaps with willing co-workers. *Id.* Ms. De Souza's immediate supervisor approved these voluntary shift swaps until approximately November 17, 2023, when the supervisor informed her that the Team Leader and Manager, defendant Meadows, would no longer authorize such arrangements. Id. ¶ 95.

According to OPWDD's submissions to the New York State Division of Human Rights ("NYSDHR"), employees are permitted to make work adjustments when approved by a supervisor. *Id.* ¶ 96. Nevertheless, after approximately November 17, 2023, OPWDD categorically refused to approve any shift adjustments to accommodate Ms. De Souza's religious observance. *Id.*

When Ms. De Souza asked her Team Leader, defendant Meadows, why OPWDD would no longer accommodate her religious observance, Ms. Meadows sarcastically suggested that Ms. De Souza find another job that would give her weekends off. *Id.* ¶ 98. When Ms. De Souza clarified she only needed the Sabbath off, not the entire weekend, Ms. Meadows responded that Ms. De Souza "needs to choose because you cannot serve two masters as the Bible states." *Id.* Ms. De Souza understood this comment to mean that Ms. De Souza was too religious to work for OPWDD. *Id.* ¶ 99.

Ms. De Souza showed Ms. Meadows language in the New York State Equal Employment Handbook, which states, "An employee is entitled to time off for religious observance of a sabbath or holy day or days, in accordance with the requirements of their religion, provided it does not impose an undue hardship to their employer, as explained below." *Id.* ¶ 100. Ms. De Souza asked Ms. Meadows if this language applied to her situation. *Id.* Ms. Meadows dismissively responded, "well I am not authorizing it." *Id.*

In East New York, the geographic area where Ms. De Souza worked for OPWDD and CSEA, there were more than enough employees working in Ms. De Souza's role as Direct Support Assistants to arrange shift swaps. *Id.* ¶ 84. There were approximately 27 Direct Support Assistants working in Cleveland House. *Id.* ¶ 85. OPWDD had two other houses in East New York, which employed Direct Support Assistants. *Id.* ¶ 86. Each of the other two houses in East New York employed 27 or more Direct Support Assistants. *Id.* ¶ 87. OPWDD at times moved Direct Support Assistants in the East New York area to different houses to accommodate staffing needs for non-religious reasons. *Id.* ¶ 88.

After November 18, 2023, having been denied both formal accommodation and informal shift swaps, Ms. De Souza was forced either to use vacation days or call out of work to observe her Sabbath. *Id.* ¶ 101. The only occasions on which she called out of work were for Sabbath observance. *Id.*

On or about December 3, 2023, Ms. De Souza submitted a second formal written request for religious accommodation. *Id.* ¶ 102. She requested a work adjustment with a colleague who was willing to take her shift on Saturdays from 7:30 to 4 p.m.. *Id.* Ms. De Souza would take the colleague's shift on Sundays, from 3:24 p.m. to 12:15 a.m. *Id.* She attached to the request a statement explaining that she observes the sabbath on Saturdays. *Id.*

On or about December 5, 2023, Ms. De Souza told defendant Thomas about this voluntary shift adjustment.  *Id.* ¶ 103.  Ms. De Souza also told Ms. Thomas that there was a shift opening up with Friday and Saturday pass days.  *Id.*  Ms. De Souza proposed both of these as solutions that would accommodate her religious practice of observing the sabbath on Saturday. *Id.*

Ms. Thomas then contacted defendant Meadows about Ms. De Souza's December 5 request.  *Id.* ¶ 104.  Ms. Meadows responded that the requests required CSEA's waiver, which she could not obtain.  *Id.*

On December 19, 2023, Ms. Thomas asked defendant Carter if Ms. De Souza could transfer to any vacancies that met her qualifications with a Saturday pass.  *Id.* ¶ 105.  Ms. Carter responded that Ms. De Souza was ineligible to transfer.  *Id.*  OPWDD denied the second formal request for an accommodation on January 4, 2024, again citing the collective bargaining agreement with CSEA as the basis for denial.  *Id.* ¶ 106.

OPWDD's purported efforts to accommodate Ms. De Souza were perfunctory and demonstrated a fundamental failure to engage in good faith.  *Id.* ¶ 108.  For example, on October 3, 2023, in seeking a union waiver for Plaintiff's accommodation request, OPWDD's representative, defendant Wilson, stated in an email to the union President Ms. Wilkie-Fields "I don't know reason" for the accommodation request, despite this being a formal religious accommodation request filed weeks earlier.  *Id.*

After OPWDD denied Ms. De Souza's second request for accommodation, Ms. De Souza discussed the denial with James Arnett, a Vice President of CSEA. *Id.* ¶ 109.  Mr. Arnett told her that she could get up to 60 days of work adjustments. *Id.*  OPWDD did not give Ms. De Souza 60 days of work adjustments.  *Id.* ¶ 110.

On January 8, 2024, Ms. De Souza filed a formal charge of discrimination with the NYSDHR. *Id.* ¶ 111.  OPWDD submitted its response to the charge on March 29, 2024, and Ms. De Souza filed her rebuttal on April 8, 2024.  *Id.*

On May 16, 2024, just five weeks and three days after Ms. De Souza submitted her rebuttal to OPWDD's opposition, OPWDD placed her on administrative leave for one week and informed her that her employment would terminate effective May 23, 2024. *Id.* ¶ 112.  The stated reason for Ms. De Souza's termination was "frequent call-outs."  *Id.* ¶ 113.  However, these "call-outs" were exclusively for the purpose of observing her sabbath after OPWDD refused to provide reasonable accommodation for her religious beliefs and practices.  *Id.*

Ms. De Souza is not the only employee of OPWDD who suffered religious discrimination based on her observance of the sabbath. *Id.* ¶ 118.  Confidential Witness 1, a former employee of OPWDD, was terminated from employment with OPWDD because that employee asked for an accommodation to observe the sabbath.  *Id.* ¶ 119.  After OPWDD denied the request for accommodation, the employee called out of work on the sabbath.  *Id.*  OPWDD fired the employee because the employee had unapproved absences on the sabbath.  *Id.*  This allegation is based on information that Confidential Witness 1 provided to Ms. De Souza.  *Id.*  Plaintiff has not disclosed the name or identifying characteristics of Confidential Witness 1 to protect against retaliation.  *Id.*

Confidential Witness 2, a long-time employee of OPWDD, told Ms. De Souza that there were several other sabbath keepers that did not receive accommodations to observe the sabbath.  *Id.* ¶ 120.  Plaintiff has not disclosed the name or identifying characteristics of Confidential Witness 2 to protect against retaliation.  *Id.*

In addition, evidence that OPWDD submitted to the New York State Division of Human Rights shows that OPWDD received many requests for accommodation in late 2023. *Id.* ¶ 121. Specifically, OPWDD submitted an email from defendant Wilson, dated October 11, 2023, stating, "I got a crash course from HR in reasonable accommodations/union involvement last week as we've received a lot of late." *Id.*

<center>**ARGUMENT**</center>

## I.    STANDARDS GOVERNING A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept[] all of the factual allegations in the [c]omplaint as true and draw[] all reasonable inferences in the [plaintiff's] favor." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). A plaintiff need not plead detailed evidence or meet a heightened pleading standard to proceed past the pleadings. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Instead, she must only "nudge[] [her] claims across the line from conceivable to plausible." *Id.*

In the context of employment discrimination claims under Title VII alleging disparate treatment, the Second Circuit has clarified that "a plaintiff is not required to plead a prima facie case" under *McDonnell Douglas* at the motion-to-dismiss stage. *Vega*, 801 F.3d at 84. It is enough to allege facts supporting a minimal inference of discrimination. *Id.; Littlejohn v. City of N.Y.*, 795 F.3d 297, 310 (2d Cir. 2015). Moreover, when the employer seeks a dismissal based on an affirmative defense, dismissal is only appropriate when the defense is apparent "on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (qualified immunity defense); *see also Rizzo v. New York City Department of Sanitation,* No. 23-CV-7190, 2024 WL 327445, at *3 (S.D.N.Y. Jul. 2, 2024) ("Undue hardship is an affirmative defense, so it may be

<center>11</center>

raised on a pre-answer motion to dismiss only if "the facts establishing it are clear from the face of the complaint.")

## II. MS. DE SOUZA STATES VALID CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT.

### A. Defendants Violated Title VII When They Denied Ms. De Souza Reasonable Accommodations for Her Religious Practice of Keeping the Sabbath.

To state a claim for failure to accommodate religion under Title VII, a plaintiff must allege: "(1) [she holds] a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [her] employer[] of this belief; and (3) [she was] disciplined for fail[ing] to comply with the conflicting employment requirement." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). If the plaintiff's factual allegations establish these elements, then the defendant must grant the accommodation unless it can show an undue hardship. *Id.*

Title VII also prohibits unions from discriminating on the basis of religion. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 666 (1987), *superseded by statute on other ground,* (Title VII "makes it an unlawful practice for a Union to 'exclude or to expel from its membership, *or otherwise to discriminate against*, any individual because of his race, color, religion, sex, or national origin.'") (emphasis in original) (quoting 42 U.S.C. § 2000-2(c)(1)). This prohibition against religious discrimination requires unions to accommodate religious practices. *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico,* 279 F.3d 49, 55 (1st Cir. 2002). To establish a prima facie claim against a union for failure to accommodate religious practice, an employee must show: "(1) a bona fide religious practice conflicts with an employment requirement, (2) he or she brought the practice to the [Union's] attention, and (3) the religious practice was the basis for the adverse employment decision." *Id.* (brackets in original, internal quotation marks omitted). The burden then shifts to the union "to

show that it made a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship." *Id.*

Ms. De Souza sufficiently pleaded all the elements of her claim against the State defendants and the union.  First, she alleged that as a Seventh-day Adventist, she sincerely believed she must not engage in secular work between sunset Friday and sunset Saturday, and that strict Sabbath observance is a core tenet of her faith (AC ¶¶ 2, 32, 53, 56). Second, she alleged that she informed OPWDD of this religious requirement during her job interview, reiterated it during onboarding with OPWDD and the Union's President, Ms. Wilkie, formally submitted multiple written accommodation requests to OPWDD supported by documentation from her pastor, and discussed her need for a sabbath accommodation with the union's Vice President, Mr. Arnett.  (AC ¶¶ 52, 54, 56, 109). Third, she alleged she was denied accommodation, placed on administrative leave, and ultimately terminated for not working on the Sabbath (AC ¶¶ 93–97, 112–114).

Defendants do not assert that Ms. De Souza has failed to allege these elements.  Instead, they claim that granting an accommodation would impose undue hardship because the accommodation would violate the seniority plan, put senior employees at a disadvantage in setting work schedules, and risk understaffing their facilities.

### 1.    The seniority plan did not prevent defendants from granting an accommodation.

Defendants lean heavily on *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), to argue that Title VII cannot compel accommodation when doing so conflicts with a collective-bargaining agreement's seniority provisions. But that reading stretches *Hardison* beyond its facts and holding. *Hardison* arose after a bench trial, when the full factual record established that the employer exhausted all options, when accommodation was "*impossible* within the seniority

framework," and every alternative would "*involuntarily* deprive" another employee of seniority rights. *Id.* at 80 (emphasis added). Only under those rigid and exhaustive conditions did the Court conclude that the employer was not required to accommodate.

In contrast, here, it was not "impossible" to make shift changes within the terms of the seniority plan. In fact, the terms of the seniority plan, the practices of OPWDD, and the union's statements to Ms. De Souza, all show that an accommodation would not have violated the plan. Nor would authorizing voluntary shift swaps "involuntarily deprive" another employee of seniority rights.

First, the seniority plan contains two exceptions under which OPWDD could have accommodated sabbath keepers. (AC ¶¶ 67-70 citing CBA §§ 44.2, 45.1(b), 45.2(c).) Those exceptions allowed OPWDD to assign work locations and shifts without regard to seniority when (1) the "operating needs" require, or (2) when necessary because of the "relevant factors concerning the employee's ability to perform the required duties and responsibilities satisfactorily." *Id.* The need to make a religious accommodation could constitute an operating need, or it could constitute a factor concerning Ms. De Souza's ability to perform required duties.

Second, OPWDD had a practice of approving voluntary shift swaps. (AC ¶¶ 81-83, 94-96.) In fact, it initially approved Ms. De Souza's voluntary shift swaps, but later, refused to do so. (AC ¶ 94-97.) The practice of making voluntary shift swaps shows that it would not have violated the seniority plan to make additional voluntary shift swaps or involuntarily deprived other employees of seniority rights.

Third, the Union's Vice President, James Arnett, told Ms. De Souza she had the right to 60 days of work adjustments. (AC ¶ 109.) OPWDD's submissions to the New York State Division of Human Rights confirm that employees are permitted to make work adjustments

14

when approved by a supervisor. (AC ¶ 96.) These work adjustments, if approved, would have allowed defendants to accommodate Ms. De Souza's sabbath.

Several Circuit Court opinions interpreting *Hardison* have held that employers must grant sabbath accommodations when the accommodation would not violate the seniority plan. *Antoine v. First Student, Inc.,* 713 F.3d 824, 840 (5th Cir. 2013) (When the collective bargaining agreement had a procedure for voluntarily swapping shifts, accommodating a sabbath keeper did not violate the collective bargaining agreement and was not an undue hardship on the employer.); *Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024, 1029 (8th Cir. 2008) (Affirming a jury verdict because there was "ample evidence permitting a reasonable jury to find that UPS could have accommodated Sturgill's religious practice on December 17, 2004, without violating the CBA and without undue hardship to UPS operations."); *Balint v. Carson City, Nevada,* 180 F.3d 1047, 1055-1056 (9th Cir. 1999) (Reversing dismissal of the employee's claim for sabbath accommodation when the employer could have accommodated the sabbath without violating the seniority plan by giving the employee split shifts.); *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1513 n.7 (9th Cir. 1989) (Affirming a judgment for a Seventh Day Adventist for religious discrimination under Title VII, and finding that there was no undue hardship defense despite a seniority plan, when the employer failed to approve voluntary trades for a sabbath accommodation, but had granted non-religious exemptions to the seniority plan.). In this Circuit, the District Court for the Eastern District of New York similarly denied summary judgment to an employer when there were "various ways" of accommodating the employee's sabbath without violating seniority provisions, including swapping shifts with other employees. *Jamil v. Sessions,* No. 14-CV02355, 2017 WL 913601, at *15 (E.D.N.Y. 2017) *see also, Rice v. U.S.F. Holland, Inc.,* 410 F.Supp.2d 1301, 1311-12 (N.D.Ga. 2005) (Denying summary judgment for

15

employer who refused to grant a sabbath accommodation based on a seniority plan in a collective bargaining agreement when employer refused to allow the employee to swap shifts.)

What *Hardison* forbids is requiring an employer to *violate* a rigid seniority rule. Granting an accommodation here would not violate the seniority plan because the plan had exceptions, both in writing and in practice, that would have allowed for the accommodation. (AC ¶¶ 67-70, 95-96, 109.) As the foregoing cases show, defendants misread *Hardison* as excusing the duty to accommodate in these circumstances.

Defendants also misread the Ninth Circuit's decision in *Balint* as supporting their refusal to accommodate based on the seniority plan. *Balint* held, "the mere existence of a seniority system does not relieve an employer of the duty to attempt reasonable accommodation of its employees' religious practices, if such an accommodation can be accomplished without modification of the seniority system and with no more than a de minimis cost." 180 F.3d at 1049. Defendants argue that under *Balint*, when there is a "strict and rigid" policy against shift swapping, accommodating the sabbath through shift swapping is an undue hardship. (NYS Brief p. 16). Here, however, unlike *Balint*, the policy against shift swapping is not strict and rigid. The complaint alleges that OPWDD had a practice of allowing shift swaps and work adjustments. (AC ¶¶ 81-83.) Moreover, in *Balint*, the court reversed the dismissal of the accommodation claim at summary judgment because there was evidence that the employer could have accommodated the employee's sabbath through split shifts. *Balint,* 180 F.3d at 1055-1056. *Balint* does not support the defendants' claim that the seniority plan in this case made accommodation an undue hardship.

Defendants assert that the Court should ignore the written exceptions to seniority in the collective bargaining agreement based on an outlier case from the Fifth Circuit, *Stolley v.*

16

*Lockheed Martin Aeronautics Co.,* 228 F. App'x 379, 382-83 (5th Cir. 2007). According to defendants, the Fifth Circuit in *Stolley* held that an "employer's contractual right to make transfers for 'other legitimate reasons' cannot be used to sidestep clear legal precedent in *Hardison* that religious accommodations do not trump workers' rights under a collective bargaining agreement." (NYS Brief p. 18.) This is a misreading of *Hardison*, which, as discussed above, ruled for the employer because it was "impossible" for the employer to make the accommodation without violating the plan. *Hardison,* 432 U.S. at 80. After *Stolley*, the Fifth Circuit in *Antoine*, ruling with the benefit of several other Circuit and District Court decisions interpreting *Hardison*, reversed the dismissal of a sabbath accommodation claim because the seniority plan's "express contractual provision precludes a determination that a shift swap necessitated a violation of the CBA and thus constituted an undue burden on First Student." *See Antoine,* 713 F.3d at 840. As the case law discussed above shows, in addition to the Fifth Circuit in *Antoine*, the Eighth Circuit, the Ninth Circuit and several district courts, including the Eastern District of New York, have all interpreted *Hardison* as requiring accommodation, if possible without violating the terms of a seniority plan. *Supra* pp. 15-16, (citing *Sturgill*, 512 F.3d at 1029-34; *Balint,* 180 F.3d at 1055-1056; *Hacienda Hotel*, 881 F.2d at 1513 n.7; *Jamil*, 2017 WL 913601, at *15; *Rice,* 410 F.Supp.2d at 1311-12.) All of these cases show that *Stolley* misread *Hardison*, and show a clear consensus that a seniority system with built-in exceptions and a record of flexibility does not give an employer grounds to deny a sabbath accommodation.

   2.  **Defendants have failed to show that their undue hardship defense is clear on the face of the complaint.**

   It is the Defendants' burden on this motion to dismiss, to show that their affirmative defense of undue hardship is clear "on the face of the complaint." *McKenna*, 386 F.3d 432 at

17

436; *Rizzo*, 2024 WL 327445, at \*3.  That burden is substantial, under the Supreme Court's decision in *Groff v. DeJoy*, 600 U.S. 447 (2023).

In *Groff*, the Supreme Court overruled decades of precedent interpreting Title VII that had allowed denial of religious accommodations based only on minimal inconvenience. Rejecting the "more than de minimis" threshold from *Hardison*, the Court held that "showing 'more than a de minimis cost,' as that phrase is used in common parlance, does not suffice to establish 'undue hardship' under Title VII." *Id*. at 468. Instead, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470.  The Court held that in the face of a request for a sabbath accommodation "like Groff's it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship.  *Consideration of other options, such as voluntary shift swapping, would also be necessary.*" *Id*. at 473 (emphasis added).

A seniority system with built-in exceptions and a record of flexibility that would permit sabbath accommodation and voluntary shift swapping, does not demonstrate a substantial burden.  See *Antoine,* 713 F.3d at 840 (Reversing the dismissal of the employees sabbath accommodation claim when the collective bargaining agreement's "express contractual provision precludes a determination that a shift swap necessitated a violation of the CBA and thus constituted an undue burden on First Student."); *Balint*, 180 F.3d at 1049 ("the mere existence of a seniority system does not relieve an employer of the duty to attempt reasonable accommodation of its employees' religious practices, if such an accommodation can be accomplished without modification of the seniority system and with no more than a de minimis cost.").  This is especially true where, as here, the accommodation not only was possible under

18

the express exceptions in the seniority plan, but also was actually implemented several times before defendants refused to grant further accommodations (AC ¶¶ 95-97). *See Hacienda Hotel,* 881 F.2d at 1513 n.7 (voluntary shift swaps were not an undue hardship when the employer "flexibly applied" its seniority system and had made exceptions in other situations).

Nothing in the Complaint demonstrates that granting Ms. De Souza's accommodation would have caused substantial disruption to OPWDD's operations. In fact, the complaint shows that defendants were able to make accommodations through the written exceptions to seniority in the collective bargaining agreement, and through the practice of making work adjustments, which both the union and OPWDD confirmed were available, and which Ms. De Souza's supervisors initially approved before denying her formal accommodation request. (AC ¶¶ 67-70, 94-97, 109.)

Even before *Groff*, courts rejected early dismissal of Title VII accommodation claims when the factual record showed that voluntary shift swaps were possible. In addition to *Antoine*, 713, F.3d at 840, and *Hacienda Hotel*, 881 F.2d 1513 n.7, discussed above, the Ninth Circuit held in *Opuku-Boateng*, "[a] claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of 'actual imposition on co-workers or disruption of the work routine.'" 95 F.3d at 1472 (quoting *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988)). The court ruled there was no undue hardship because the State had not attempted to determine how many of the employee's sabbath shifts "coworkers would be willing to accept in exchange for undesirable Sunday, holiday or night shifts that they would otherwise have had to work." *Opuku-Boateng,* 95 F.3d at 1470. The court held: "It is not unreasonable to assume that other employees would have been willing to trade for many, if not all, of Opuku-Boateng's Sabbath shifts in exchange for shifts that they were

19

assigned and might have found even more undesirable." *Id.* Similarly, in Ms. De Souza's case, the State defendants and the union could have polled the direct support assistants in the East New York neighborhood to ask if they wanted to trade their undesirable shifts on Saturday night, overnight shifts from Saturday night to Sunday morning, Sunday morning sifts and holidays, with Ms. De Souza's Saturday day shift to accommodate her sabbath. (AC ¶ 81-84.) However, defendants never did that.

In *Sturgill,* 512 F.3d at 1027, the Eighth Circuit affirmed a jury verdict for the plaintiff on his Title VII accommodation claim, rejecting UPS's undue hardship defense. The court held there was "ample evidence permitting a reasonable jury to find that UPS could have accommodated Sturgill's religious practice on December 17, 2004, without violating the CBA and without undue hardship to UPS operations." *Id.* at 1029. Although UPS claimed that granting split shifts or alternative accommodations would undermine seniority or require fundamental operational changes, the evidence at trial showed that Sturgill's supervisor had regularly split his Friday workload to allow him to finish before sundown—similar to how UPS accommodated other employees for secular reasons, like attending Little League games. *Id.* at 1029–30. This conflicting evidence, the court noted, was sufficient to support the jury's finding that the requested accommodation did not impose an undue hardship. *Id.* at 1034. *See also E.E.O.C. v. JBS USA*, 339 F. Supp. 3d 1135, 1170–71 (D. Colo. 2018) (The court rejected the employer's undue hardship defense in part because the record showed that the company had successfully accommodated Muslim employees' prayer schedules during Ramadan the prior year.)

Post-*Groff*, this Court applied the undue hardship standard rigorously when it denied summary judgment on an undue hardship defense even though the employer cited security-related concerns about beard-wearing in a correctional facility. *Sughrim v. New York*, 690 F.

20

Supp. 3d 355 (S.D.N.Y. 2023) (Judge R. Abrams).  The Court held that *Groff* required proof of "substantial increased costs in relation to the conduct of [the employer's] particular business," and rejected the employer's reliance on speculative or outdated safety rationales.  *Id*. at 380.

Defendants rely on cases, decided prior to the Supreme Court's decision in *Groff*, that found undue hardship under the de minimis standard.  (NYS Brief pp 15-20; CSEA Brief. p.9).  Those cases are no longer valid after *Groff*.  Moreover, contrary to the facts alleged here, none of them involved seniority plans with written exceptions that would have allowed the accommodation, and none of them involved an employer who rejected voluntary shift swaps that would have permitted the accommodation without violating the plan.

The union claims that there are no allegations to show that the union was motivated by discrimination when it refused to waive seniority provisions and authorize shift swaps with Ms. De Souza.  (CSEA Br. p. 6.)  However, as the Supreme Court held in *Goodman v. Lukens Steel Co.,* 482 U.S. 656 (1987), a union cannot simply acquiesce in an employer's discrimination against an employee in violation of Title VII.  *Id.* at 669.  In *Goodman*, the Supreme Court held that "a collective-bargaining agent could not, without violating Title VII and § 1981, follow a policy of refusing to file grievable racial discrimination claims however strong they might be and however sure the agent was that the employer was discriminating against blacks."  *Id.* at 668-69.  So too here, the union, which knew that Ms. De Souza sought a religious accommodation, violated Title VII when it refused to waive seniority provisions and authorize work adjustments to accommodate her sabbath, despite a policy of approving up to 60 work adjustments for non-religious reasons, as the statements of its Vice President, Mr. Arnett, confirm.  (AC ¶¶ 77, 109.)

The facts pleaded in the complaint show that OPWDD and the union had tools at their disposal to accommodate Ms. De Souza's Sabbath observance without violating the seniority

21

plan or other undue hardship.  OPWDD could have invoked the exceptions to the seniority plan written into the collective bargaining agreement (AC ¶ 67-70);  the union could have approved 60 work adjustments that the union's Vice President, Mr. Arnett, said she had the right to take (AC ¶ 109); both the union and OPWDD could have surveyed employees who had undesirable weekend shifts on Saturday nights or Sundays to see if they would swap those shifts for Ms. De Souza's Saturday day shift (AC ¶ 81-84).  Accordingly, defendants fail to carry their burden on their motion to dismiss the accommodation claim.

## B.   Ms. De Souza's Allegations of Disparate Treatment State a Valid Claim of Religious Discrimination in Violation of Title VII of the Civil Rights Act.

Counts II and VI of Ms. De Souza's amended complaint make all the necessary allegations to state valid claims of religious discrimination based on disparate treatment in violation of Title VII of the Civil Rights Act.  To state a claim of religious discrimination under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his . . . religion,  . . .was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School District,* 801 F.3d 72, 86 (2d Cir. 2015).

Unions have liability for violations of Title VII of the Civil Rights Act too.  When a union knows that an employer is discriminating against an employee, and fails to take action that is available to it to challenge that discrimination, it violates Title VII.  *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 666-69 (1987).

Defendants concede that they took adverse action against Ms. De Souza.  (NYS Brief at 21; CSEA Brief at 6.)  Having conceded this point, they base their motion to dismiss the disparate treatment claim solely on the incorrect assertion that Ms. De Souza has not alleged facts showing a plausible inference of a discriminatory motive.  *Id.*

The burden of pleading a plausible inference of discriminatory motive is "minimal." *Vega,* 801 F.3d at 86-87; *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015).  The Second Circuit explained the rationale for this minimal burden in *Vega*:

> In making the plausibility determination, the court must be mindful of the 'elusive' nature of intentional discrimination.  . . .  As we have recognized, 'clever men may easily conceal their motivations.' . . . .  Because discrimination claims implicate an employer's usually unstated intent and state of mind, . . .rarely is there 'direct, smoking gun, evidence of discrimination . . . .'  Instead, plaintiffs usually must rely on 'bits and pieces' of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination.

801 F.3d 86-87 (citations omitted.)

For purposes of proving discriminatory motive, the plaintiff must provide evidence supporting the inference that discrimination "was *one of the employer's motives*, even if the employer had other, lawful motives that were causative in the employer's decision." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (emphasis in original). A plaintiff can plead a plausible inference of discrimination with allegations "including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 295 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009) (internal quotation marks omitted)).  Those allegations are present here, showing that Ms. De Souza has pled a "mosaic of intentional discrimination."  *Vega*, 801 F.3d at 86 (internal quotation marks and citation omitted).

### 1.    The derogatory statements Ms. Meadows made about Ms. De Souza's religion show a discriminatory motive.

The amended complaint alleges that Ms. De Souza's supervisor, Ms. Meadows, mocked Ms. De Souza's religion and implied she was too religious to work for OPWDD.  (AC ¶¶ 98-99.)

Specifically, she told Ms. De Souza she "needs to choose because you cannot serve two masters as the Bible states." (AC ¶ 99.) Defendants assert that Ms. Meadow's disparaging remarks do not show discriminatory intent because the complaint does not plead that Ms. Meadows was a decisionmaker. (NYS Brief p.23.) However, the amended complaint alleges that Ms. Meadows was the Treatment Team Leader for OPWDD's Cleveland House, which is the location where Ms. De Souza worked. (AC ¶ 40.) It also alleges in detail Ms. Meadows' involvement in the denial of Ms. De Souza's request for a sabbath accommodation. (AC ¶¶ 59 & 95-100.) These facts support a reasonable inference that Ms. Meadows was involved in the decision to deny an accommodation and fire Ms. De Souza.

### 2. The favorable treatment of non-sabbath observers through selective enforcement of the seniority plan shows a discriminatory motive.

The amended complaint alleges that both the State defendants and the Union treated employees who do not keep the sabbath more favorably through selective enforcement of exceptions written into the seniority plan, and a practice of allowing work adjustments and voluntary shift swaps. (AC ¶¶ 71-74.) It further alleges that defendants allowed employees to adjust their work schedules for non-religious reasons, but denied Ms. De Souza adjustments to her work schedule to accommodate her religious practice of keeping the sabbath. (AC ¶¶ 71-74, 83.)

Defendants incorrectly assert that these allegations are conclusory. (NYS Brief p.22; CSEA Brief p.1.) To the contrary, the defendants' admissions support these allegations. The State, in its submission to the New York State Human Rights Commission, stated that supervisors can approve work adjustments. (AC ¶ 96.) The Union's Vice President, Mr. Arnett, stated that Ms. De Souza had the right to 60 work adjustments. (AC ¶ 109.) It is a reasonable inference from these facts that the defendants have approved work adjustments for secular

reasons.  However, they refused to authorize enough work adjustments to accommodate Ms. De Souza's sabbath.  (AC ¶ 110.)

In similar circumstances, this Court held that plaintiffs met the "minimal burden of alleging facts suggesting an inference of discriminatory motivation" based on selective enforcement of policies barring accommodation for religious practice combined with derogatory comments about religion.  *See Sughrim v. New York,* 503 F.Supp.3d 68, 97 (S.D.N.Y. 2020) (Judge Ronnie Abrams).  In *Sughrim,* the plaintiffs, who were corrections officers employed by New York State, alleged they were denied accommodations to wear beards for religious reasons while "countless corrections officers working at DOCCS facilities across the State . . .  wore beards regularly without repercussion."  In addition, plaintiffs in *Sughrim* alleged that defendants made mocking statements about the plaintiff's religion.  *Id.*; *see also Talukder v. New York,* No. 22-CV-1452 (RA), 2023 WL 2752863, at*8-9 (S.D.N.Y. Mar 31, 2023) (Judge Ronnie Abrams) (holding that a plaintiff claiming religious discrimination based on denial of an accommodation to wear a beard for religious reasons alleged a plausible inference of discrimination by showing that similarly situated employees were permitted to wear beards).

Defendants assert that the allegations of preferential treatment are inadequate because Ms. De Souza does not allege details about the schedule adjustments of the employees who received preferential treatment, whether their requests were comparable to Ms. De Souza's requests for Sabbath adjustments, what the seniority levels were of the other employees, and whether the seniority provisions of the collective bargaining agreement were waived for the other employees.  (NYS Brief at 22.)  However, the Supreme Court has made it clear that a plaintiff need not plead with this level of specificity to show discriminatory motive at the motion to

dismiss stage. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (Rejecting a "heightened pleading standard in employment discrimination cases . . . .")

In *Swierkiewicz*, the Supreme Court reversed the Second Circuit's affirmance of a dismissal of an employment discrimination case under Rule 12(b)(6). The Court stated that the Second Circuit incorrectly imposed a "heightened pleading standard in employment discrimination cases" that "conflicts with Federal Rule of Civil Procedure 8(a)(2)." 534 U.S. at 512. Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court stated that Rule 9(b) requires greater particularity in pleading in certain actions, but does not include employment discrimination as one of the actions requiring greater particularity. *Id.* at 513.

The Second Circuit, interpreting *Swierkiewicz* in light of the Supreme Court's later decisions in *Twombly* and *Iqbal*, held that the facts alleged "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. In *Vega*, the Second Circuit stated that "detailed factual allegations" are not required. 801 F.3d at 86. The Second Circuit has also held that "Ordinarily, [w]hether two employees are similarly situated . . . presents a question of fact, rather than a legal question to be resolved on a motion to dismiss. . . . *Brown v. Daikin Am. Inc.,* 756 F.3d 219, 230 (2d Cir. 2014) (determining that the plaintiff stated plausible claim of discrimination where he did not plead any facts about the comparators' "job function, experience, qualifications, [or] rate of pay") (internal quotation marks omitted). These authorities show that Ms. De Souza does not have to plead with heightened particularity that employees who received non-religious accommodations are comparable to Ms. De Souza.

Giving Ms. De Souza the benefit of all reasonable inferences from the facts she alleges in her amended complaint, it is plausible that there are many similarly situated employees who

26

received work adjustments for non-religious reasons.  The complaint alleges that defendant OPWDD has over 20,000 employees in the state.  (AC ¶ 117.)  It also alleges that there were approximately 27 employees who were in the same direct support assistant role as Ms. De Souza in the facility where she worked, and a similar amount of direct support assistants in two other houses in East New York, the geographic area where she worked.  (AC ¶ 85-87.)  That brings the total number of direct support assistants in the East New York area to approximately 81.  East New York is a small neighborhood in New York City.  It is reasonable to infer from the facts alleged about the large number of direct support assistants in that small neighborhood, that there are hundreds of additional direct support assistants working in the same role as Ms. De Souza throughout the state.  The amended complaint also alleges that the defendants have a seniority plan with express exceptions allowing for non-religious work adjustments, and a practice of making non-religious work adjustments.  (AC ¶67-75.)  It is a reasonable inference from all of these facts that there are direct support assistants, who are similarly situated to Ms. De Souza, who received work adjustments for non-religious reasons.

Plaintiff, an individual living and working in Brooklyn, who only worked for defendant OPWDD for approximately 9 months, cannot be expected to plead with particularity, at this early stage of the lawsuit, without the benefit of discovery, facts about similarly situated employees, among the 20,000 that OPWDD employs throughout New York State.  That is a proper subject for discovery. Ms. De Souza has alleged enough facts to allow for the reasonable inference that discovery will reveal the identities of the similarly situated employees who received work adjustments for non-religious reasons.

### 3.  The sequence of events shows a discriminatory motive.

The sequence of events leading up to the termination of Ms. De Souza's employment creates an inference of discrimination.  *See Littlejohn*, 795 F.3d at 312.  Defendants terminated

Ms. De Souza after she missed daytime Saturday shifts due to her sabbath. (AC ¶ 101, 113). She only called out on these days because defendants refused to use the exceptions in the seniority plan to approve her sabbath accommodation, refused to approve voluntary shift swaps she had arranged, and refused to approve work adjustments that both the State defendants and the union admit they could have authorized. *Id.* ¶¶ 71, 72, 94-95, 102-104, 109-110, 113. In similar circumstances, courts have held that plaintiffs pled an inference of discriminatory motive based on the sequence of events. *Ostrowski v. Atlantic Mutual Insurance Companies*, 968 F.2d 171, 183 (2d Cir. 1992); *Falcon v. City University of New York*, 263 F.Supp.3d 416, 426 (E.D.N.Y. 2017); *Miller v. Hartford Fire Ins. Co.*, 652 F.Supp.2d 220, 231 (D. Conn. 2009).

The sequence of events also shows a discriminatory motive on the part of the union. The union knew Ms. De Souza wanted a sabbath accommodation from her meeting with the union President, Ms. Wilkie, and Ms. De Souza's conversations with the union's Vice-President, Mr. Arnett. (AC ¶¶ 54, 109.) Mr. Arnett told Ms. De Souza that she had a right to 60 days of work adjustments – more than enough to accommodate her sabbath. (AC ¶ 109.) The fact that employees, according to Mr. Arnett, have a right to 60 work adjustments, raises a reasonable inference that the union has in the past waived seniority provisions to make work adjustments for non-religious reasons. Nonetheless, the union refused to waive the seniority provisions to allow for the work adjustments, even though it could have done so. (AC ¶¶ 70, 109-110.) In these circumstances, the union's refusal to waive seniority provisions to approve work adjustments is enough to raise the minimal inference of discrimination required at this stage of the pleadings.

### C. Ms. De Souza Pled a Valid Claim of Retaliation in Violation of Title VII.

To survive a motion to dismiss on a retaliation claim, Plaintiff's allegations must plausibly show "(1) participation in a protected activity; (2) that the defendant [or its agent] knew of the protected activity; (3) an adverse employment action; and (4) a causal connection

28

between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (internal quotation marks omitted).

Here, it is uncontested that Plaintiff has satisfied the first three requirements for a prima facie case. See NYS Brief p. 24. As to the fourth element, requiring a causal connection between the protected activity and the adverse employment action, Plaintiff meets the low burden that applies at the motion to dismiss stage.

### 1. Ms. De Souza's request for sabbath accommodation was the direct cause of defendants' decision to fire her.

Defendants assert that plaintiff's "'frequent call-outs' were the immediate cause of her termination." NYS Brief at 25 (quoting AC ¶ 113.) But those "frequent call-outs" were exclusively on Saturdays, the day of plaintiff's Sabbath observance. (AC ¶¶ 101, 113.) Defendants caused those call-outs because defendants refused to provide her an accommodation to observe her sabbath. When defendants fired Ms. De Souza for frequent call-outs, they fired her because of her religious practice.

### 2. The timing of plaintiff's termination shows defendants' retaliatory intent.

Defendants fired Ms. De Souza five months after she filed her charge of discrimination with the New York State Human Rights Division. (AC ¶¶ 111-112.) The five-month gap between Plaintiff's filing of her initial complaint and her termination falls well within the time courts have considered sufficient to establish a causal relationship. *See Gorzynski v. JetBlue Airways Corp*, 596 F.3d 93, 110 (2d Cir. 2010). ("Though the [Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [the Circuit] ha[s] previously held that five months is not too long to find the causal relationship.") (citing *Gorman-Bakos*, 252 F.3d at 555); *see also Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (court held

29

eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship.)

Further, the period between when Ms. De Souza filed her complaint with the Human Rights Division and her termination was marked by her ongoing interactions with defendants regarding their refusal to accommodate her sabbath. After Ms. De Souza filed her initial complaint of discrimination with the NYS Division of Human Rights in early January 2024, she continued to seek accommodation for her sabbath observance and file additions to that complaint for defendants' failure to provide accommodations.  On April 8th, 2024, she filed her rebuttal to OPWDD's response to her original complaint.  (AC ¶ 111.)  Just five weeks and three days after she submitted this rebuttal, OPWDD placed her on administrative leave, and informed her she would be terminated effective May 23, 2024.  *Id.* ¶ 112

This continued engagement during the period between her complaint to the Human Rights Division and the adverse employment actions supports a finding of causation. *See Gorman-Bakos,* 252 F.3d at 555 (where the court noted it was "particularly confident" that causation existed despite a five-month gap, where the plaintiff provided "evidence of exercises of free speech and subsequent retaliatory actions" from the defendant in the period following the initial complaint).

## III.  MS. DE SOUZA STATES A VALID CLAIM UNDER SECTION 1983 FOR VIOLATIONS OF HER RIGHT TO FREE EXERCISE OF RELIGION AND EQUAL PROTECTION UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

To state a claim under 42 U.S.C. § 1983, a plaintiff must plausibly allege that: (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. 42

30

U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  Defendants do not dispute that they acted under color of state law.

Defendants seek dismissal on two principal grounds.  First, they assert that there was no violation of Ms. De Souza's constitutional rights because Ms. De Souza's request for accommodation conflicted with a bona fide, neutral seniority system that is generally applicable. (NYS Brief p. 32.)  However, the complaint pleads facts showing that the seniority plan is not generally applicable -- it is rife with exceptions, both written into the plan and in practice. (AC ¶ 67-70, 95-97, 109-110.)  Defendants used those exceptions for secular reasons, but refused to invoke the exceptions to accommodate Ms. De Souza's sabbath.  *Id.*  They failed to show a compelling governmental reason for their refusal to invoke the exceptions to the seniority plan.

Second, defendants claim that they have qualified immunity because they assert Ms. De Souza's right to a religious accommodation in the face of the seniority plan is not clearly established.  (NYS Br. p.33.)  That does not correctly state the legal principles that governed when defendants refused Ms. De Souza's request for a sabbath accommodation, suspended her and then fired her.  In fact, the law is clear:  the seniority plan is not a defense to religious accommodation because the plan had exceptions that would have permitted accommodation.  *See* cases cited *supra* pp.15-16.

### A. Defendants Violated Ms. De Souza's Constitutional Rights When They Refused, Without a Compelling Reason, to Apply the Seniority Plan's Exceptions to Ms. De Souza.

Defendants assert incorrectly that the CBA is a "bona fide, neutrally applicable" seniority system.  In doing so, defendants attempt to invoke the rational basis test and avoid the correct strict scrutiny standard.  Although defendants claim that Ms. De Souza concedes this point, in fact, her  complaint alleges exactly the opposite. OPWDD's seniority system has many exceptions, written into the terms of the plan and unwritten exceptions that would have allowed

31

the defendants to accommodate Ms. De Souza's sabbath.  (AC ¶¶ 67-70, 95-97, 109.)  The New York State defendants admit this, describing the plan in their memorandum of law as "rife with discretionary choices."  (NYS Br. p.42.)

The exceptions to the seniority plan destroy defendants' argument for dismissal of the section 1983 claim.  Defendants rely on case law, inapplicable here, which holds that when "the government seeks to enforce a [policy] that is neutral and of general applicability, [] then it need only demonstrate a rational basis for its enforcement, even if the enforcement of the law incidentally burdens religious practices."  (NYS Br. p.32 (brackets in original) (quoting *Fifth Ave. Presbyterian Church v. City of New York,* 293 F.3d 570, 574 (2d Cir. 2002)).

However, here, because of the exceptions to the seniority plan, the seniority plan is not generally applicable.  *Fulton v. City of Philadelphia*, 593 U.S. 522, 533-34 (2021) ("A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.") (internal quotation marks and brackets omitted.)  As the Supreme Court held in *Fulton*:  "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it 'invite[s]' the government to decide which reasons for not complying with the policy are worthy of solicitude, *Smith*, 494 U.S. at 844, -- here, at the Commissioner's 'sole discretion.'"  593 U.S. at 537.  Because OPWDD's seniority regime bristles with discretionary exemptions, the plan must meet the strict scrutiny test.  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022).

Strict scrutiny demands a government interest "of the highest order" which "must be narrowly tailored in pursuit of those interests." *Church of the Lukumi Babalu Aye, Inc. v. City of*

*Hialeah*, 508 U.S. 520, 546 (1993) (internal quotation marks omitted). Defendants cannot meet this standard.

OPWDD asserts that the seniority plan was "intended to assign work shifts in a fair manner." (NYS Br. p.32). However, contractual seniority is not compelling when the contract itself authorizes departures for "operating needs" and the needs of individuals. (AC ¶ 68.) Moreover, had defendants approved the voluntary shift swaps Ms. De Souza arranged, they could have achieved the goals of assigning work fairly and protecting employees against involuntarily losing seniority rights, without burdening religion. Defendants' refusal to approve voluntary shift swaps shows that OPWDD's implementation of its seniority plan was not narrowly tailored to achieve the interest of protecting seniority rights and assigning shifts in a fair manner.

Defendants also cite resident safety as a justification for their refusal to accommodate Ms. De Souza's sabbath. (NYS Br. p.20.) However, as the allegations show, supervisors approved some Saturday swaps Ms. De Souza arranged, undermining their claim that accommodating her sabbath raised safety issues. (AC ¶¶ 94-95.) Moreover, the issue of whether the defendants' refusal to accommodate the sabbath was rationally related to safety is an issue of fact, not appropriate for resolution in a motion to dismiss under Rule 12(b)(6). *Sughrim v. New York*, 690 F.Supp.3d 355, 385 (S.D.N.Y. 2023) (Judge R. Abrams) (Holding that there were issues of fact for the jury to decide about whether regulations on beard length for corrections officers were rationally related to safety.)

Defendants incorrectly assert that the Free-Exercise claim is governed by the same standards as Title VII. (NYS Br. p.33.) However, section 1983 provides an independent remedy governed by the Free-Exercise Clause's strict-scrutiny test, not Title VII's "undue-hardship"

standard.  *Central Rabbinical Congress of U.S. & Canada v. New York City Department of Health & Mental Hygiene*, 763 F.3d 183, 193-97 (2d Cir. 2014); *Tandon v. Newsom*, 141 S. Ct. 1294, 1296-97 (2021). When OPWDD fired Ms. De Souza, it violated a clearly established right to a sabbath accommodation, because it allowed secular exceptions yet denied identical relief for sabbath observance, and because it refused to employ the less restrictive option of voluntary shift swaps.  Moreover, even if, as defendants incorrectly assert, Title VII supplied the standards governing Ms. De Souza's claims under section 1983, Ms. De Souza pled valid Title VII claims, as shown above.

### B.    Defendants Fail to Meet the High Burden That Applies to Their Qualified Immunity Defense.

A defendant that seeks dismissal under Rule 12(b)(6) based on a defense of a qualified immunity must meet a "stringent standard."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d. Cir. 2004).  "Not only must the facts supporting the defense appear on the face of the complaint, . . .but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* (citations omitted) quoting *Citibank, N.A. v. K-H Corp.,* 968 F.2d 1489, 1494 (2d Cir. 1992).

Under this stringent standard, plaintiff is "entitled to all reasonable inferences from the facts alleged, not only those that support [her] claim, but also those that defeat the immunity defense." *Id.*  "Although it is possible for a qualified immunity defense to succeed on a motion to dismiss . . . such a defense faces a formidable hurdle . . . and is usually not successful." *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022).

A Rule 12(b)(6) motion to dismiss based on qualified Immunity fails when, as here, a plaintiff "pleads facts showing (1) that the official violated a statutory or constitutional right, and

(2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Ashcroft v. al-Kidd,* the Supreme Court held:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Id.* at 741 (brackets in original).

In deciding whether the law is clearly established, the relevant considerations are "the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Sabir v. Williams,* 52 F.4th 51, 63 (2d Cir. 2022). "It is not necessary, of course, that the very action in question has previously been held unlawful . . . ." *Ziglar v. Abbasi,* 582 U.S. 120, 151 (2017) (internal quotation marks omitted). Even if there is no decision by the Supreme Court or the Second Circuit directly on point, a legal right is clearly established if "preexisting law clearly foreshadows a particular ruling on the issue." *Sabir,* 52 F.4th at 63.

The right of an employee to a reasonable accommodation to keep the sabbath was clearly established when defendants rejected Ms. De Souza's request for a sabbath accommodation. Several months before OPWDD hired Ms. De Souza, the Supreme Court issued its decision on sabbath accommodations in *Groff*, 680 U.S. 447 (2023).

In *Groff,* the Supreme Court held that when an employee requests an accommodation for the sabbath, "Title VII requires that an employer reasonably accommodate an employee's practice of religion . . . ." 600 U.S. at 473, citing *Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, 455 (7th Cir. 2013). As *Groff* explained, the duty to accommodate religious practices

35

under Title VII has been clearly established since 1972, when Congress amended Title VII to add a duty to accommodate religious observance. *Groff,* 600 U.S. at 458.

Despite the clearly established right to sabbath accommodations, defendants argue that "it is proper for an employer to deny a reasonable accommodation request when it conflicts with the seniority provisions of a collective bargaining agreement . . . ." (NYS Br. p.34.)  Defendants rely principally on the Supreme Court's decision in *Hardison,* 432 U.S. 63 (1977).  However, as discussed above, *Hardison* and the cases interpreting it show that defendants had to accommodate Ms. De Souza and other sabbath keepers because the accommodation would not have violated the seniority plan. *Supra* pp. 13-21.  This includes Court of Appeals cases from the Fifth, Eighth and Ninth Circuits, and District Court cases from the Second Circuit and the Eleventh Circuit. *Supra* pp.15-16.

Defendants incorrectly assert they are entitled to qualified immunity in reliance on *Genas v. State of New York Dep't of Correctional Services*, 75 F.3d 825 (2d Cir. 1996).  (NYS Br. pp.33-34.)  *Genas*, however, which was decided before the Supreme Court issued its decision on strict scrutiny in *Fulton*, did not apply the strict scrutiny test that *Fulton* held was applicable. 75 F.3d at 831.  In addition, *Genas* found that there was no violation of religious rights because the employer had offered voluntary shift swaps. *Id*. at 832.  Here, as discussed above, defendants refused to approve voluntary shift swaps that Ms. De Souza arranged.  (AC ¶¶ 94-95, 102-104). *Genas* does not support the claim of qualified immunity because it was based on Supreme Court authority that was no longer valid at the time defendants denied Ms. De Souza's accommodation, and involved defendants who proposed voluntary shift swaps as accommodations that the defendants here refused to approve.

36

## IV.  MS. DE SOUZA HAS PLED VALID CLAIMS UNDER THE HUMAN RIGHTS LAWS OF NEW YORK STATE AND NEW YORK CITY.

### A.  This Court Has Jurisdiction over Ms. De Souza's State and City Claims.

#### 1.  The election of remedies doctrine does not bar Ms. De Souza's claims.

Defendants assert that the election of remedies doctrine bars Ms. De Souza's claims under the New York State Human Rights Laws because Ms. De Souza had filed a complaint with the New York State Human Rights Division.  (NYS Br. p.40.)  However, after defendants filed their motion, the Commission granted an administrative dismissal of those charges, at the request of Ms. De Souza, to allow her to pursue her claims in federal court. (Harwood Declaration Ex 2).  That administrative dismissal defeats the election of remedies defense.  *See Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 76 (2d Cir. 2000) (Reversing a summary judgment order dismissing state law claims when there had been an administrative convenience dismissal.)

#### 2.  Sovereign immunity does not bar the state and city law claims against the individual defendants.

Defendants incorrectly assert that the State's sovereign immunity bars Ms. De Souza from suing the individual defendants on the NYSHRL and NYCHRL claims for actions in their individual capacities.  Sovereign immunity does not protect state officials from being sued in their individual capacities. *Morin v. Tormey*, 620 F.Supp.2d 353, 365 (N.D.N.Y. 2009) (citing *Hafer v. Melo*, 502 U.S. 21, 23 (1991)); *Everest Foods Inc. v. Cuomo*, 585 F.Supp.3d 425, 435 (S.D.N.Y 2022).

Despite this clear rule, defendants challenge the claims for injunctive relief against the individual defendants in their individual capacities due to an alleged lack of authority to alter employment practices.  However, the allegations of the complaint show that the individual defendants had discretion under the written exceptions to the seniority plan and in practice to accommodate Ms. De Souza's sabbath.  (AC ¶¶ 67-74.)  The complaint alleges that the Defendants

opted not to use the various exceptions of the CBA in accommodating her sincerely held religious beliefs. (AC ¶¶ 71-72.)   The complaint further alleges defendants used certain exceptions to accommodate employees for non-religious reasons. (AC ¶ 74.)

Here, because defendants, acting in their individual capacity, exercised discretion under the CBA to determine whether to grant religious accommodations or apply exceptions favorable to Ms. De Souza, they have the operational control necessary to be enjoined. This discretion distinguishes them from officials without such authority in cases defendants cited, wherein the officials cannot be said to have been acting in their individual capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 138 (D. Conn. 2011) (injunctive relief against individuals was denied because they lacked the power to effectuate policy changes). *See also Loren v. Levy*, No. 00-CV-7687, 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003) (public officials lacked any discretion in the hiring or dismissal of the plaintiff).

### 3.    Supplemental jurisdiction over the State and Local claims is proper.

The Second Circuit gives District Court Judges discretion to assess supplemental jurisdiction under 28 U.S.C. § 1367, taking into consideration judicial economy, convenience, fairness, and comity.  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85-86 (2d Cir. 2018).  When state-law claims arise from the same nucleus of facts, those factors generally favor retention.  *Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 245 (2d Cir. 2011)

Ms. De Souza's NYSHRL and NYCHRL counts are built on the very accommodation denials and discipline that underlie her Title VII and § 1983 counts.  Dropping them would require parallel discovery and motion practice yet yield no comity benefit because no unsettled state issue is presented.  Defendants' lone contention that every federal claim will fail is refuted by the merits arguments of this brief.

38

**B.    Defendants Violated Ms. De Souza's Rights Under New York State and City Human Rights Laws.**

Generally, claims under the NYSHRL and NYCHRL will survive a motion to dismiss if the plaintiff has plead valid claims under Title VII, because the state and city claims are subject to a more lenient standard.  *See Rowett v. ProSelect Insurance Company*, No. 24-cv-05417 (ALC), 2025 WL 1664018, at *7 (S.D.N.Y. June 12, 2025) ("Because Plaintiff has met the more stringent Title VII standard for pleading a claim of religious discrimination, her religious discrimination claims survive the less stringent NYSHRL and NYCHRL standards.")  Ms. De Souza's claims under state and city law survive for the same reasons that the Title VII claims survive.

Defendants raise additional defenses to the state and city claims that they did not raise as defenses to Title VII.  As shown below, those defenses fail.

**1.    Individual defendants are employers within the meaning of the NYSHRL and NYCHRL.**

Individual liability under the New York State Human Rights Law (NYSHRL) is limited to "'individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees.'" *Burgess v. New School* University, No. 23-cv-4944 (JGK), 2024 WL 4149240, at *21 (S.D.N.Y. September 11, 2024) (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F.Supp.2d 349, 365-66 (S.D.N.Y. 2012)).  An individual may "only be held liable under the NYSHRL if that individual 'actually participated in the conduct giving rise to a discrimination claim.'" *Id.* (quoting *Figueroa v. Rsquared NY, Inc.*, 89 F. Supp. 3d 484, 493 (S.D.N.Y. 2015). *See also Malena*, 886 F. Supp. 2d at 366 (same).

The NYCHRL provides a "broader basis for direct individual liability than the NYSHRL," in that it provides for individual liability of an employee "regardless of ownership or decision[] making power" so long as the plaintiff pleads that the individual participated in the discriminatory conduct.  *Malena,* 866 F.Supp.2d at 366.

39

Defendants assert that the NYSHRL and NYCHRL claims against the individual defendants fail "because they are not employers." (NYS Brief p.30.) However, the complaint contains sufficient allegations that the individual defendants are employers within the meaning of the NYSHRL and NYCHRL. The complaint alleges that all the individual defendants were personally involved in rejecting sabbath accommodations for Ms. De Souza. (AC ¶¶ 39-44, 58-61, 76-78, 91-93, 95, 97-100, 103-105, 108.)

### 2. The individual defendants also are liable for aiding and abetting violations of New York State and City Law.

Individual liability exists under the NYSHRL and NYCHRL "if a defendant aided and abetted the unlawful discriminatory acts of others." *Chen v. Shanghai Café Deluxe, Inc.*, No. 17-CV-2536, 2023 WL 2625791 at *4 (S.D.N.Y. Mar. 24, 2023); *see also*, *Nezaj*, 719 F.Supp.3d at 336 (denying defendant's motion to dismiss NYSHRL claims based on plaintiff "plausibly plead[ing] aiding and abetting liability"). Here, the complaint alleges that the individual defendants aided and abetted the unlawful discriminatory acts of OPWDD, by actively participating in OPWDD's denial of her sabbath accommodation, such that they may be subject to liability under the NYSHRL. AC ¶ 38, 41, 43-44, 76, 93, 97, 105.

As a rule, "aiding and abetting is only a viable theory where an underlying violation has taken place." *Falchenberg v. New York State Dept. of Educ.*, 338 Fed.Appx. 11, 14 (2d. Cir. 2009) (cited by *Williams v. New York City Housing Authority*, 61 F. 4th 55, 68 (2d. Cir. 2023). Defendants assert there is no underlying liability because sovereign immunity bars the State and City claims against the institutional defendants.

Despite this general rule, courts in this Circuit are "split on the question of whether a finding that sovereign immunity bars a claim against a plaintiff's employer would also mean that an individual cannot be held liable as an aider or abettor of that state employer's conduct."

40

*Dawkins v. State University of New York at Cortland*, No. 5:23-CV-1163 (GTS/MJK), 2024 WL 3377938 at *7 (N.D.N.Y. July 11, 2024).  Although the Second Circuit has not directly addressed this split, it has stated in a different context that "the Eleventh Amendment 'goes to the jurisdiction of the federal court, as opposed to the underlying liability of the State or state entity.'" *Nat'l Assoc. for the Advancement of Colored People v.* Merrill, 939 F.3d 470, 475 (2d Cir. 2019) (quoting *Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 150 (1993) (dissenting opinion). At least one court in the Southern District of New York held that the Second Circuit "obliquely" resolved this split in *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)*.  Henry-Offor v. CUNY*, No. 11-cv-4695, 2012 WL 2317540, at *5 (S.D.N.Y. June 15, 2012).  In *Feingold,* the Second Circuit held that an employer enjoyed sovereign immunity.  366 F.3d at 149.  Nonetheless, it and went on to analyze an employee's individual liability under the NYSHRL and NYCHRL.  *Id.*

Consistent with *Feingold* and *Henry-Offer*, many courts in this circuit have held that sovereign immunity does not bar individual aiding and abetting liability. *See, e.g.*, *Huffman v. Brooklyn Coll.*, 20-CV-6156, 2022 WL 43766, at *3 (E.D.N.Y. Jan. 5, 2022) (holding that sovereign immunity "does not extinguish predicate liability on the merits," and thus does not pose as an absolute barrier to an aiding and abetting claim against an individual employee); *Tromblee v. New York*, 19-CV-0638, 2021 WL 981847, at *16-17 (N.D.N.Y. Mar. 16, 2021) (holding that a determination that a state employer is protected by sovereign immunity does not equate to a finding that the employer did not violate a state, such that sovereign immunity does not preclude claims against individual defendants under a theory of aiding and abetting); *Bonaffini v. City Univ. of New York*, 20-CV-5118, 2021 WL 2895688, at *3 (E.D.N.Y. July 9,

41

2021) (collecting cases on both sides of split but ultimately concluding sovereign immunity does not preclude aiding and abetting claims against individuals).

Although defendants cite contrary authority (NYS Br. p.31), the better approach is that sovereign immunity does not extinguish individual aiding and abetting liability. This is in line with the Second Circuit's reading of the Eleventh Amendment as concerned with "the jurisdiction of the federal court, as opposed to the underlying liability of the State or state entity." *Nat'l Assoc. for the Advancement of Colored People*, 939 F.3d at 475 (internal quotation marks omitted).

## V.    DEFENDANTS FAILED TO MEET THE HIGH BURDEN ON THEIR MOTION TO STRIKE THE CLASS ALLEGATIONS.

Defendants incorrectly rely on *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) as setting the standard governing their motion to strike under Rule 12(f). (NYS Br. p.36.) "The Second Circuit has not addressed the applicability of *Twombly* and *Iqbal* to affirmative defenses, nor has any circuit court." *Aros v. United Rentals, Inc.*, No. 3:10-CV-73 (JCH), 2011 WL 5238829 at *2 (D. Conn., Oct. 31, 2011). The District Courts are divided on whether to apply *Twombly* and *Iqbal* to the pleading of affirmative defenses, including motions to strike. *See Lane v. Page*, 272 F.R.D. 581, 589 n. 5 (D.N.M. 2011) (providing cases extending the standard enunciated in *Twombly* and *Iqbal* to affirmative defenses); *Id.* at 590 n. 6 (providing cases declining to apply the standard enunciated in *Twombly* and *Iqbal* to affirmative defenses).

Under Rule 12(f), the Court may strike matter from the pleadings only if the challenged allegations are "redundant, immaterial, impertinent, or scandalous." Motions to strike are disfavored in this Circuit and are granted only in rare circumstances where the challenged material has no possible bearing on the subject matter of the litigation. *See, e.g.*, *Borgese v. Baby Brezza Enter, LLC*, No. 20-CV-1180, 2021 WL 634722, at *1 (S.D.N.Y. Feb 18, 2021); *Rojas v.*

42

*Triborough Bridge & Tunnel Authority*, No. 18 Civ. 1433 (PKC), 2020 WL 1910471 at *3

(S.D.N.Y. Apr. 17, 2020) (rejecting a motion to strike class allegations at the pleading stage);

*Haley v. Teachers Insurance and Annuity Association of America*, 37 F.Supp.2d 250, 272-73

(S.D.N.Y. 2019) (same); *Emilio v. Sprint Spectrum L.P.*, 68 F.Supp.3d 514, 514 (S.D.N.Y. 2014)

("Motions to strike are viewed with disfavor and infrequently granted.") (brackets and internal

quotation marks omitted).

As discussed below, the defendants' motions fail under these standards.  The complaint's

allegations show that discovery will yield evidence that the class is sufficiently numerous, that

common issues predominate, and that Ms. De Souza's claims are typical of the class.

**A.   The Motion to Strike Is Premature Because Discovery Will Yield Evidence that the Potential Class Members Are Sufficiently Numerous.**

Where class certification turns on facts that will be developed in discovery, it is "simply

too soon to tell" whether Rule 23 certification is appropriate.  *Greene v. City of New York*, 21

Civ. 05762 (LAP), 2025 WL 949549 at *15 (S.D.N.Y. Mar. 28, 2025) (denying motion to strike

as being premature and holding defendants' objections to class treatment, based on commonality

and typicality, could not be resolved on the face of the complaint and were better addressed after

discovery in a class certification motion); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F.Supp.2d

113, 117 (S.D.N.Y. 2012) (motions to strike class allegations are "even more disfavored" than

motions to strike because a motion to strike class allegations "requires a reviewing court to

preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in

the complaint and before plaintiffs are permitted to complete the discovery to which they would

otherwise be entitled on questions relevant to class certification."); *Chenensky v. New York Life

Ins. Co.*, No. 07 Civ. 11504 (WHP), 2011 WL 1795305 at *4-5 (S.D.N.Y. Apr. 27, 2011)

(denying the "harsh remedy of denial of class certification" as being "premature").  In *Chen-*

43

*Oster* the court held that the Goldman's motion was procedurally "premature" in that they "failed to show that, with the benefit of discovery, Plaintiffs would be unable to allege facts and circumstances" to meet class certification requirements. *Id.* at 119-20.

Here, the complaint's allegations show that defendants' motions to strike fall squarely within the category of premature Rule 12(f) motions that courts routinely reject on the ground that discovery will yield facts supporting class certification. The complaint alleges generally that there are many other employees who were denied sabbath accommodations, were disciplined for observing the sabbath, and many prospective employees were denied employment with OPWDD because of their sabbath observances. Amend. Compl. At ¶ 11. The specific factual allegations in the complaint support this. OPWDD has more than 20,000 employees, many of whom have religious beliefs that prohibit secular work on the Sabbath. AC at ¶ 117. Confidential Witness 1 was terminated after calling out of work from OPWDD in observance of the sabbath. AC at ¶ 119. Confidential Witness 2, a long-time employee of the OPWDD, told Ms. De Souza that there are other sabbath observing employees at OPWDD who were not provided accommodations. AC at ¶ 120. Defendant Wilson, stated in an email addressing Ms. De Souza's request for a sabbath accommodation, that she had received a lot of accommodation requests recently. AC ¶ 121. Moreover, when Ms. De Souza told the union's President that she needed sabbath accommodations, the President responded that she was "not going to court again." AC at ¶ 54. This comment suggests that there were other instances in which the Union denied sabbath accommodations. All of these allegations show that discovery will likely uncover many more members of the class who were denied religious accommodation, in satisfaction of Rule 23 class certification standards.

44

**B.    The Amended Complaint Alleges Commonality.**

Rule 23(a)(2) requires that there be at least one question of law or fact common to the class.  As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, commonality is satisfied where the claims "depend upon a common contention … of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. 338, 350 (2011).

Here, the central question is whether defendants violated federal and state antidiscrimination laws by denying sabbath accommodations under a seniority plan that applies to approximately 20,000 employees of OPWDD, despite exceptions to the seniority plan both in writing and practice, that would allow sabbath accommodations. That question is common to all class members, regardless of their specific religion or employment outcome.

In arguing commonality is not met as a "matter of law," defendants rely heavily on a single case for the proposition that "[i]n determining whether a discretionary decision (e.g., whether the CBA, or its exceptions, apply to an accommodation request) satisfies commonality, courts undertake an analysis of framework, criteria, and managerial involvement." (NYS Br. p.43) (citing *Kassman v. KPMG LLP*, 416 F.Supp.3d 252, 277-81 (S.D.N.Y. 2018)). That ruling involved a motion for class certification, not a pre-answer motion to strike.  In an earlier iteration of *Kassman*, when the court was considering a pre-answer motion to strike, the court rejected the motion as premature. *See Kassman v. KPMG LLP*, 925 F.Supp.2d 453, 464 (S.D.N.Y. 2013). The court noted that, in a pretrial motion to strike, the "relevant question is not, as it was in *Dukes*, whether Plaintiffs have 'prove[d] that there are in fact sufficiently numerous parties, common questions of law or fact, etc.,' for purposes of Rule 23 . . . [T]he relevant question is whether, based on the allegations in the [complaint], it is plausible that plaintiffs will come forth with

45

sufficient evidence at the class certification stage to demonstrate commonality". *Kassman,* 925 F.Supp.2d at 464. Further, *Kassman* noted that in *Dukes*, the "Court did not close the door altogether on the possibility of certifying a class based on a policy of giving discretion to lower-level supervisors . . . The Court acknowledged that 'in appropriate cases, giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory – since an employer's undisciplined system of subjective decisionmaking [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination.'" *Kassman*, 925 F.Supp.2d at 463 (quoting *Dukes*, 564 U.S. at 355).

The defendants are correct in their assertion that the exceptions to the seniority plan, as established in Sections 44.2, 45.1(b), and 45.2(b) "could not be less rigid," including "vague terms, such as 'operating needs' and 'ability to perform duties satisfactorily,' that could not possibly constrain the exercise of discretion." (NYS Brief p. 43) (citing AC at ¶ 67, 69). That is exactly why they easily could have accommodated Ms. De Souza without violating the seniority plan, and without causing undue hardship. As the Supreme Court established in *Dukes*, discretion does not bar the plaintiff from meeting the commonality requirement for class certification. *See Kassman*, 925 F.Supp.2d at 463 (quoting *Dukes*, 564 U.S. at 355). Discretion exercised within the framework of a uniform policy does not bar certification. *Kassman*, 925 F. Supp. 2d at 463–64. Likewise, the existence of different job titles, worksites, or individual outcomes among class members does not defeat commonality. Rule 23(a)(2) requires only a single common legal question, and differences in how class members were affected — whether denied accommodation, disciplined, or deterred — go to damages or remedy, not to liability. *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84–85 (2d Cir. 2015).

46

As noted by the court in *Kassman*, questions of commonality with this level of detail are to be left for the Rule 23 certification stage. *Id.* at 474. To meet the high bar for striking class allegations on predominance grounds at the pleadings stage, a defendant must "present. . . specific evidence—as opposed to mere speculation—that [a] purportedly individualized issue predominat[ed] over common issues." *Figueroa v. Kronos Inc.*, 454 F.Supp.3d 772, 789 (N.D. Ill. 2020). Here, the Defendants, at best, provide "mere speculation" that individual issues predominate over common issues. *Id.*

The State's suggestion that religious diversity within the class defeats commonality is contrary to precedent. In *Sughrim v. New York*, this Court certified a class comprising Muslim, Jewish, Rastafarian, and Christian plaintiffs who alleged they were targeted by a grooming policy, finding that "the shared injury is the uniform policy itself." 503 F. Supp. 3d at 97–98. The same is true here: Plaintiff challenges a single, agency-wide no-waiver policy affecting all Sabbath-observing employees in the same way.

### C.   The Amended Complaint Alleges Typicality.

Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). The factual backgrounds of each plaintiff's claim need not be identical. *Id.*

Ms. De Souza's claim is typical. She sought a sabbath accommodation which defendants denied under their incorrect interpretation of the CBA. Her legal theory is identical to the rest of the class: that refusing to grant permanent sabbath accommodations constitutes religious discrimination. Courts have found typicality satisfied where the named plaintiff and the class challenge a common policy, even if their individual experiences vary. See *Marisol A.*, 126 F.3d at 378–79.

47

Nor do Defendants identify any unique defense that would render Ms. De Souza atypical. A defense defeats typicality only if it "threaten[s] to become the focus of the litigation." *Brown v. Kelly*, 609 F.3d 467, 480 (2d Cir. 2010). No such defense is present here. Defendants' asserted defense that no employee may receive a permanent sabbath waiver applies equally to Ms. De Souza and all class members.

## CONCLUSION

For the foregoing reasons, plaintiff Suzette De Souza respectfully requests that the Court deny defendants' motions to dismiss the amended complaint and motions to strike the class certification allegations.

Dated:  New York, New York
        August 13, 2025

<div style="margin-left:50%">

HARWOOD LAW PLLC
*Attorney for Plaintiff Suzette De Souza*

By:  _____
     Anthony Harwood
     260 Madison Avenue, 16th Floor
     New York, NY 10016
     (212) 867-6820

</div>

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)**

Pursuant to Local Civil Rule 7.1(c) and Section 4(A) of the Individual Rules of Judge

Abrams, I certify that this document complies with the length limitations of Judge Abrams'

Order, dated July 7, 2025 (ECF Dkt. No. 75).  Based upon a count of the words as set forth in the

Local Rules, this document contains 14,815 words, which is less than the 15,000 words that the

Court authorized.

Dated:  New York, New York
   August 13, 2025

                _____