UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUZETTE DE SOUZA, individually and on behalf of all
others similarly situated,

                                 **Plaintiff,**

    -against-

THE STATE OF NEW YORK; NEW YORK STATE
OFFICE FOR PEOPLE WITH DEVELOPMENTAL
DISABILITIES; et al.,

                              **Defendants.**

Civil Action No.
1:25-CV-1222 (RA)

---

*DEFENDANT CSEA'S REPLY MEMORANDUM OF LAW IN SUPPORT OF*
*MOTION TO DISMISS AND STRIKE THE AMENDED COMPLAINT*

---

DAREN J. RYLEWICZ
Leslie C. Perrin, of Counsel
Attorney for Defendant CSEA
Civil Service Employees Association, Inc.
Box 7125, Capitol Station
143 Washington Avenue
Albany, New York 12224
(518) 257-1443
leslie.perrin@cseainc.org

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................i

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS....................................................................................................1

ARGUMENT

      PLAINTIFF'S TITLE VII CLAIM SHOULD BE DISMISSED........................................2

          A.    Plaintiff's Failure to Accommodate Claim...........................................................2
          B.    Plaintiff's Disparate Treatment Claim..................................................................5
          C.    Plaintiff's Retaliation Claim ................................................................................7

CONCLUSION.....................................................................................................................8

CERTIFICATE OF COMPLIANCE....................................................................................9

## TABLE OF AUTHORITIES

### Federal Cases

*Cf. Antoine v. First Student, Inc.*, 713 F.3d 824, 840 (5th Cir. 2013) ..............................4

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018).  ...................1

*Cosme v. Henderson*, 287 F.3d 152, 160 (2d Cir. 2002) ................................................3

*E.E.O.C. v. Union Independiente de la Autoridad de Acueductos de Puerto Rico*,
  279 F.3d 49, 55 (1st Cir. 2002)...................................................................................3

*Goodman v. Lukens Steel Co.,* 482 U.S. 656 (1987) ......................................................5

*Jamil v. Sessions,* No. 14-CV-02355, 2017 WL 913601,
  at *15 (E.D.N.Y. Mar. 6, 2017).................................................................................4

*Kalsi v. New York City Transit Auth.,* 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998),
  aff'd, 189 F.3d 461 (2d Cir. 1999)..............................................................................3

*Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015)................................5

*Mines v. City of New York,* No. 11-CV-7886, 2013 WL 5904067,
  at *8-9 (S.D.N.Y. Nov. 4, 2013) ...............................................................................3

*Sides v. NYS Div. of State Police,* No. 03-CV-153, 2005 WL 1523557,
  at *5 (N.D.N.Y. June 28, 2005) ................................................................................3

*Sughrim v. New York,* 503 F. Supp. 3d 68, 96-97 (S.D.N.Y. 2020)..............................5

*Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 83 (1977).................................2,3

*Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 85-85 (2d Cir. 2015).............5,6

### Statutes

Fed. R. Civ. Pro. 12(b)(1) and (6)...................................................................................1

i.

## PRELIMINARY STATEMENT

This Memorandum of Law ("MOL") is in reply to Plaintiff's opposition to Defendant Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO's ("CSEA") motion to dismiss the Amended Complaint ("AC") pursuant to Fed. R. Civ. Pro. 12(b)(1) and (6). CSEA relies on the arguments in its initial MOL in support of its motion, in addition to the responsive arguments made here.

## STATEMENT OF FACTS

The Court is respectfully referred to the Statements of Facts in CSEA's initial MOL in addition to the following:

The only provision in the contract that refers to a sixty-day work adjustment is contained in Appendix VII, entitled "Mandatory Alternate Duty ["MAD"] Policy Memorandum of Understanding ["MOU"]." (Perrin Supp. Decl., Ex. A.)[1]

---

[1] The Institutional Services Unit CBA is incorporated by reference and relied on heavily throughout the AC. (ECF 59, ¶¶ 48-49, 61, 67-70, 76, 93, 106-107, 125.) Thus, this Court may consider it in reviewing this motion. *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018).

# ARGUMENT

## PLAINTIFF'S TITLE VII CLAIM SHOULD BE DISMISSED.

As an initial matter, Plaintiff refers to all the Defendants together in her brief, regardless of whether they are the State Defendants or Defendant CSEA. This is inherently problematic where the union and the employer are subject to distinct burdens and obligations under statute and caselaw. It further confuses analysis of the issues and defenses when Plaintiff conflates the actions of the State Defendants and Defendant CSEA, attributing them to both inappropriately. This reply MOL focuses on correcting misplaced burdens, on Plaintiff's assumptions about the meaning and application of the State/CSEA collective bargaining agreement ("CBA"), and on distinguishing attributable facts. In addition to the arguments herein, Defendant CSEA relies on its initial MOL.

### A.    Plaintiff's Failure to Accommodate Claim.

Both CSEA and the State agree that the applicable CBA contains a neutral, nondiscriminatory seniority system that would be violated by providing Plaintiff with an accommodation whereby she would be free from working during her sabbath (from sundown on Fridays until sundown on Saturdays). Here, the State contacted CSEA and asked whether CSEA would waive the seniority provisions of the contract. CSEA declined to deprive its senior members of their contract rights to select their preferred schedules in order to accommodate Plaintiff – a brand new, probationary employee. Defendants were unable to accommodate Plaintiff but did not violate her rights or the law.

Plaintiff argues that CSEA's reliance on *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 83 (1977) is misplaced, opining that there were potential "accommodations" that could have been provided to Plaintiff that would not violate the CBA. (ECF 76, pp. 13-15[17].) This, however, is incorrect.

2

First, *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002), states that, "in general terms" Title VII requires unions to accommodate religious practices "within reasonable limits." This holding, to the extent it is applicable in the Second Circuit, does not negate the holding of *Hardison* that a union and employer are not required to waive contract provisions that secure seniority rights to other employees in order to do so. *Hardison*, 432 U.S. at 83; *Cosme v. Henderson*, 287 F.3d 152, 160 (2d Cir. 2002); *Mines v. City of New York*, No. 11-CV-7886, 2013 WL 5904067, at *8-9 (S.D.N.Y. Nov. 4, 2013); *Sides v. NYS Div. of State Police*, No. 03-CV-153, 2005 WL 1523557, at *5 (N.D.N.Y. June 28, 2005); *Kalsi v. New York City Transit Auth.*, 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999).

Next, Plaintiff asserts that there are "exceptions" to the seniority provisions, which the State could have opted to use to accommodate her. (ECF 76, p. 14, citing CBA [*see* ECF 70-4 or 72-1] §§ 44.2, 45.2[b], 45.2[c].) To this end, Plaintiff points to language that permits the State to circumvent strict seniority in the selection of employees for a particular position when the State can articulate an "operating need[]" for a specific employee to fill the position, or where the State can articulate an "identification of differences" between two employees seeking a position that justifies skirting seniority. (ECF 70-4, CBA §§ 44.2, 45.2[b], 45.2[c].) Contrary to Plaintiff's supposition, these provisions are not intended to be used as subterfuge to sidestep seniority. The State's reason for resorting to a less-senior employee under either provision must be able to withstand the potential scrutiny of the contract grievance arbitration procedure. This is precisely because the parties have agreed that seniority is paramount, with minimal exceptions; these provisions represent an "involuntary" deprivations of the seniority rights of one unit employee over another. *Hardison*, 432 U.S. at 80. It would, in fact, violate the contract for the State to simply claim that it

3

had an operating need for a sabbath observer to fill a Direct Support Assistant ("DSA") position or, alternatively, to claim that Plaintiff possessed some identifiable difference that makes her, as a sabbath observer, better than a more senior employee at performing as a DSA. Here, it is not possible to accommodate Plaintiff's religious practice without violating the seniority plan. *Jamil v. Sessions*, No. 14-CV-02355, 2017 WL 913601, at *15 (E.D.N.Y. Mar. 6, 2017).

As for Plaintiff's suggestion that voluntary shift swaps could have served her purpose, that too is incorrect. (ECF 76, p. 14.) Notably, there is no procedure in the CBA permitting shift swapping. *Cf. Antoine v. First Student, Inc.*, 713 F.3d 824, 840 (5th Cir. 2013). Plaintiff was advised by the State that shift swaps on an ongoing or permanent basis would violate the contract seniority provisions, which CSEA would not waive, and could not be permitted as an accommodation. (ECF 59, ¶¶ 93, 106.)

Finally, Plaintiff's interpretation of what she claims she was told by Vice President Arnett is belied by the plain language of the contract. (*Compare* ECF 76, ¶ 109 *with* ECF 70-4 and Perrin Supp. Decl., Ex. A, Appendix VII.) There is no reference to "work adjustment" in the seniority provisions of the CBA; a "work adjustment" is not an exception to the seniority provisions. (ECF 70-4.) The only provision in the contract that refers to a sixty-day work adjustment is contained in Appendix VII, entitled "Mandatory Alternate Duty ["MAD"] Policy Memorandum of Understanding ["MOU"]." (Perrin Supp. Decl., Ex. A.) The MAD MOU permits an employee who was injured at work the opportunity to return to an alternate duty assignment (such as a "light" duty assignment, or an alternate work location) so long as the employee is expected to be fully recovered, and able to resume their normal assignment, in no more than sixty days. (*Id.*) Only certain employees are eligible. It is not a means by which a religious accommodation may be made

for Plaintiff or anyone else. Also, it does not operate as an "intermittent" arrangement, as Plaintiff surmises.

**B.      Plaintiff's Disparate Treatment Claim.**

Turning to Plaintiff's disparate treatment claim, the Amended Complaint fails to allege facts that provide "at least minimal support" for the proposition that Plaintiff's religion was a substantial or motivating factor contributing to CSEA's decision not to waive the seniority provisions of the contract. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85-85 (2d Cir. 2015) (internal citations omitted). While this burden at the pleading stage may be minimal, it does require Plaintiff to show facts suggesting an inference of discriminatory motivation. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Sughrim v. New York*, 503 F. Supp. 3d 68, 96-97 (S.D.N.Y. 2020).

To begin, Plaintiff's reliance on *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987) is misplaced. (*See* ECF 76, pp. 21-22.) Plaintiff suggests that CSEA acquiesced in discrimination against Plaintiff by her employer. (*Id.*) Yet, there are no allegations in the Amended Complaint to support this assertion. (*See* ECF 59.) When the State contacted CSEA to ask whether CSEA would waive the seniority provisions of the CBA, it advised that it "did not know the reason for the accommodation request." (ECF 59, ¶¶ 76, 78.) Plaintiff's inquiry during her onboarding about "having the sabbath off," which she alleges she was told would be determined by Human Resources, does not lead to the conclusion Plaintiff asks this Court to draw, namely that "CSEA already knew [Plaintiff] had requested a sabbath accommodation." (ECF 59, ¶¶ 54, 76, 78; *see* CEF 76, p. 21.) In any event, the assertion that CSEA acquiesced in discrimination rests on the unwarranted conclusion that the State was engaged in religious discrimination, that CSEA was aware of this discrimination, and that CSEA refused to oppose this discrimination. There are no

5

allegations in the Amended Complaint to support these claims. Nor is there any allegation in the Amended Complaint to support the assertion that CSEA can authorize work adjustments, or that Vice President Arnett told Plaintiff that CSEA had done so for secular reasons. (*See* CEF 76, p. 21 *citing* ECF 59, ¶¶ 77, 109.)

Further, CSEA has not conceded that it took adverse action against Plaintiff. (*See* ECF 76, p. 22; *compare with* ECF 70-5, p. 6.) CSEA did not waive the seniority provisions of the CBA; that is not an adverse action. In fact, Plaintiff remained employed for several months after her accommodation requests were denied. (ECF 59, ¶ 112.) Plaintiff swapped shifts with coworkers with her supervisor's approval, used accrued leave time, or called out of work; she never worked the sabbath. (ECF 59, ¶¶ 94, 95, 101.) Ultimately, the State acted to terminate Plaintiff's probationary employment due to a pattern of unscheduled absences. (ECF 59, ¶ 113.) CSEA does not have the power or authority to terminate a probationer's employment. Nor did CSEA request that Plaintiff be terminated. Plaintiff does not suggest otherwise.

Irrespective of adverse action, Plaintiff has not pled the "bits and pieces" making up a "mosaic of intentional discrimination" by CSEA. *Vega*, 801 F.3d at 86-87. As against Defendant CSEA, Plaintiff pleads "[o]n information and belief" that CSEA waived the CBA seniority provisions and surveyed employees for voluntary shift swaps for other employees, for non-religious reasons, but did not do so for her. (ECF 59, ¶¶ 79, 82.) Plaintiff does not offer the basis for her belief, the source of the information, or any "fact" that can take these allegations from pure conjecture to a plausible inference of discriminatory motive on the part of Defendant CSEA.

Likewise, Plaintiff's claim that, after both her accommodation requests were denied, Vice President Arnett told her "she could get up to 60 days of work adjustments" doesn't plausibly support an inference of discriminatory motivation by CSEA in any way. (ECF 59, ¶ 109.) Plaintiff

6

pleads that work adjustments can be approved by a supervisor and that the State did not give her any work adjustments. (ECF 59, ¶¶ 96, 110.) Based on the Amended Complaint, CSEA does not have the authority to grant or withhold work adjustments; that is up to Plaintiff's supervisors. (*Id.*) Nor does Plaintiff assert that CSEA refused to grant a work adjustment to Plaintiff. (ECF 59, ¶ 109.) Indeed, Plaintiff does not assert that she ever requested a work adjustment, following her conversation with Vice President Arnett. Rather, Plaintiff simply pleads that she was told about work adjustments at some point by a union officer.[2] (*Id.*)

As explained, *supra*, a work adjustment is not an exception to the seniority provisions contained in contract Articles 44 and 45. The MAD MOU appearing at contract Appendix VII is a separate provision applicable only to employees returning to work following absence due to disability as classified by the State Insurance Fund. (Perrin Supp. Decl., Ex. A.) Plaintiff conflates the two, positing that the right to a work adjustment "raises a reasonable inference that the union has in the past . . . [made] work adjustments for non-religious reasons." (ECF 76, p. 28.) However, this is not supported by anything pled in the Amended Complaint. (*See* fn. 2.) This simply does not meet even Plaintiff's minimal burden.

## C.    Plaintiff's Retaliation Claim.

Plaintiff has not pled allegations against CSEA for retaliation. (*See* ECF 59, esp. ¶ 114.)

As for protected activity, Plaintiff filed a complaint of discrimination with the New York State Division of Human Rights against the State. (ECF 59, ¶¶ 17, 111.) She did not file against CSEA. Plaintiff was terminated from her probationary position by the State a few months later,

---

[2] On this issue, Plaintiff's brief cites paragraphs of the Amended Complaint that discuss the "exceptions" to the seniority provisions in contract Articles 44 and 45, that plead Plaintiff's belief that the State Defendants exercised the exceptions for non-religious reasons, and that offer Plaintiff's conclusion that the State Defendants discriminated against her. (ECF 76, p. 27.) There are no similar assertions contained in the Amended Complaint relating to Defendant CSEA.

due to frequent call outs from work. (ECF 59, ¶¶ 112-113.) Plaintiff did not file the EEOC Charge naming CSEA as a Respondent along with the State until months later. (ECF 59, ¶ 112-113.) Plaintiff did not assert that CSEA fired her. (ECF 59, ¶¶ 23, 114.)

This claim is insufficient and should be dismissed.

## CONCLUSION

Based on the pleadings and papers filed in this action, it is respectfully requested that Plaintiffs Amended Complaint, and this action, be dismissed, together with any such other or further relief as this Court may deem just and proper.

Dated:      September 12, 2025
            Albany, New York

                              Respectfully submitted,

                              DAREN J. RYLEWICZ
                              Attorney for Defendant CSEA

By:

                              Leslie C. Perrin, of counsel
                              Civil Service Employees Association, Inc.
                              Box 7125, Capitol Station
                              143 Washington Avenue
                              Albany, New York 12224
                              (518) 257-1443
                              leslie.perrin@cseainc.org

PL/25-0198/LCP/ks/ Brief Body and Cover (ECF format) #1470518

8

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) of the Joint Local Rules of the Southern and Eastern Districts of New York ("Local Rules"), and Section 4(A) of the Individual Rules & Practices in Civil Cases of Ronnie Abrams, United States District Judge, I certify that this document complies with the length limitations of those rules.  Based upon a count of words as set forth in the Local Rules, this document contains 2,147 words (fewer than 3,500 words).

Leslie C. Perrin