UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

SUZETTE DE SOUZA, individually and on behalf of all
others similarly situated,                                                        1:25-cv-1222 (RA)

Plaintiff,

-against-

THE STATE OF NEW YORK; NEW YORK STATE OFFICE
FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES;
WILLOW BAER, Acting Commissioner (in her official
capacity); STEPHANIE THOMAS, Designee for Reasonable
Accommodations (in her official and personal capacities);
TERESA MEADOWS, Treatment Team Leader (in her official
and personal capacities); DAWN WILSON, Deputy Director of
State Operations (in her official and personal capacities);
SHERMAKE TANNIS, Regional Director of Human Resources
(in his official and personal capacities); SHAUNA CARTER,
Associate Director of Human Resources (in her official and
personal capacities); COREEN PAYNE, Developmental
Disabilities Program Specialist IV (in her official and personal
capacities); and CIVIL SERVICE EMPLOYEES
ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO,

Defendants.

-------------------------------------------------------------------------- x

## NYS DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

*Counsel for Defendants The State of New York; New York State Office for People with Developmental Disabilities ("OPWDD"); Willow Baer, Acting Commissioner; Stephanie Thomas, Designee for Reasonable Accommodations; Teresa Meadows, Treatment Team Leader; Dawn Wilson, Deputy Director of State Operations; Shermarke Tannis, Regional Director of Human Resources; Shauna*

*Carter, Associate Director of Human Resources; and Coreen Payne, Disabilities Program Specialist IV (collectively, the "NYS Defendants")*

ELIZABETH FILATOVA
CAROLINE WALLITT
Assistant Attorneys General
  *of Counsel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I. PLAINTIFF MISINTERPRETS THE SENIORITY PROVISIONS OF THE
    COLLECTIVE BARGAINING AGREEMENT .............................................................. 2

    A.   Plaintiff's Interpretation of the CBA Violates Standard Principles of Contract
    Interpretation ...........................................................................................................3

    B.   Plaintiff Has Not Plausibly Alleged a Practice of Freely Granting Exceptions to CBA
    Seniority Provisions ................................................................................................5

    II. ..... GIVEN THE CBA'S PROPER INTERPRETATION THE COMPLAINT DOES NOT
    PLAUSIBLY STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........... 6

    A. Plaintiff Has Failed to State a Claim under Title VII ....................................... 7

    B.   Plaintiff Failed to State a Claim under § 1983 Because Rational Basis Review Applies
    to the Analysis of Plaintiff's Constitutional Claims Against the NYS Defendants ...........11

    III. PLAINTIFF'S OTHER ARGUMENTS FAIL ................................................................. 12

    A.   Plaintiff Has Failed to State a Claim for Title VII Retaliation ......................................12

    B.   Plaintiff's NYSHRL and NYCHRL Claims Also Fail Under the Correct Interpretation
    of the CBA ...........................................................................................................13

    IV. ALTERNATIVELY, THE COURT SHOULD STRIKE PLAINTIFF'S ALLEGATIONS
    PERTAINING TO A PURPORTED CLASS ..................................................................... 13

    A.   Second Circuit Courts Strike Conclusory Class Allegations, Like Those in the
    Amended Complaint, Under *Iqbal* and *Twombly* ..............................................13

    B.   Plaintiff Has Not Properly Pled Commonality or Typicality .......................................15

CONCLUSION ........................................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs., Inc.,
   515 F. Supp. 2d 298 (N.D.N.Y. 2007)................................................................................5

Antoine v. First Student, Inc.,
   713 F.3d 824 (5th Cir. 2013) ...........................................................................................7

Aros v. United Rentals, Inc.,
   No. 10-cv-73, 2011 WL 5238829 (D. Ct. Oct. 31, 2011)..............................................13

Baker v. The Home Depot,
   445 F.3d 541 (2d Cir. 2006)............................................................................................9

Blige v. City Univ. of New York,
   No. 15-cv-08873, 2017 WL 498580 (S.D.N.Y. Jan. 19, 2017) ....................................10

Borgese v. Baby Brezza Enters. LLC,
   No 20-cv-1180, 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) .......................................14

Brown v. Kelly,
   609 F.3d 467 (2d Cir. 2010)..........................................................................................16

Clear Blue Specialty Ins. Co. v. TFS NY, Inc.,
   690 F. Supp. 3d 138 (E.D.N.Y. 2023) ............................................................................4

CNH Indus. N.V. v. Reese,
   583 U.S. 133 (2018)........................................................................................................4

EEOC v. Hacienda Hotel,
   881 F.2d 1504 (9th Cir. 1989) ........................................................................................8

Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   No. 97-cv-8779, 1998 WL 321446 (S.D.N.Y. June 18, 1998) .....................................14

Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.,
   252 F.3d 545 (2d Cir. 2001)..........................................................................................12

Greenfield v. Philles Recs., Inc.,
   98 N.Y.2d 562 (2002) .....................................................................................................4

Groff v. DeJoy,
   600 U.S. 447 (2023).........................................................................................................8

Kassman v. KPMG LLP,
   925 F.Supp.2d 453 (S.D.N.Y. 2013)............................................................................15

Lane v. Page,
   272 F.R.D. 581 (D.N.M. 2011)..................................................................................13

Nadel v. Shinseki,
   57 F. Supp. 3d 288 (S.D.N.Y. 2024)..........................................................................12

PFT of Am., Inc. v. Tradewell, Inc.,
   No. 98-cv-6413, 1999 WL 179358 (S.D.N.Y. Mar. 31, 1999)...................................14

Reinhardt v. Wal–Mart Stores, Inc.,
   547 F.Supp.2d 346 (S.D.N.Y. 2008).............................................................................5

Sturgill v. United Parcel Service, Inc.,
   512 F.3d 1024 (8th Cir. 2008) ......................................................................................7

Sughrim v. New York,
   503 F. Supp. 3d 68 (S.D.N.Y. 2020)...........................................................................10

Tom Doherty Assocs. Inc. v. Saban Entm't Inc.,
   869 F. Supp. 1130 (S.D.N.Y. 1994).............................................................................4

Transworld Airlines, Inc. v. Hardison,
   432 U.S. 63 (1977)..................................................................................................... 7-9

Wal-Mart Stores, Inc. v. Dukes,
   564 U.S. 338 (2011)....................................................................................................15

**Constitution**

U.S. Constitution..............................................................................................................1, 11

**Federal Statutes**

§ 1983..........................................................................................................................1, 7, 11

Title VII ..................................................................................................................... 1, 6-7, 12

**State & Local Statutes**

New York State Human Rights Law ............................................................................ 1, 12-13

v

New York City Human Rights Law......................................................................... 1, 12-13

**Federal Rules**

Rule 12 .................................................................................................................... 1-2, 15

The NYS Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Amended Complaint ("Amend. Compl.") (ECF Dkt. No. 59), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to strike the Amended Complaint's class action-related allegations pursuant to Fed. R. Civ. P. 12(f) ("Motion to Dismiss and Strike" or "NYS Defs. MOL").

## PRELIMINARY STATEMENT

Plaintiff Suzette De Souza fails to refute the NYS Defendants' arguments for dismissal of her claims for: (i) alleged discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. L. § 296 ("NYSHRL"); and the New York City Human Rights Law, Admin. Code of N.Y.C. § 8-107 ("NYCHRL"); and (ii) an alleged violation of her rights to engage in the free exercise of religion under the U.S. Constitution, brought under 42 U.S.C. § 1983 ("§ 1983").

Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss and Motions to Strike the Class Allegations, filed August 13, 2025, ("Pl. Opp. MOL" or "Opposition"), fails because: (i) Plaintiff incorrectly interprets the terms of the collective bargaining agreement ("CBA") between the Civil Service Employees Association ("CSEA") and OPWDD in a way that would require OPWDD to permit permanent shift swaps regardless of employee seniority, an interpretation that does not comport with the plain language of that contract or with the contracting parties' understanding of it; (ii) once the CBA is read according to its plain terms, Plaintiff's legal arguments in support of her Title VII and U.S. Constitution claims fail; in addition, (iii) Plaintiff does not adequately refute the NYS Defendants' arguments that she fails to plausibly allege that she was terminated in retaliation for filing her administrative complaint and fails to state a claim under either the NYSHRL or NYCHRL.

1

Alternatively, if this Court declines to dismiss the Amended Complaint in full, it should nevertheless strike the class action-related allegations at Paragraphs 7-12 and 116-131 pursuant to Fed. R. Civ. P. 12(f).

**ARGUMENT**

### I. PLAINTIFF MISINTERPRETS THE SENIORITY PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT

Nearly all of the arguments in Plaintiff's Opposition rely on a plainly incorrect interpretation of the seniority provisions of the CBA. Pl. Opp. MOL, pp. 5-6 & 14. Plaintiff argues that the CBA is subject to an interpretation that would allow the NYS Defendants to unilaterally ignore the seniority provisions of the agreement whenever a junior employee makes a request for a schedule change. Id. Plaintiff cites two provisions that she claims support this conclusion: (1) a provision stating that appointments are to be made based on seniority, "subject to operating needs"; and (2) a provision stating that appointments are to be made based on seniority, "subject to an identification of differences between employees with respect to relevant factors concerning the employee's ability to perform the required duties and responsibilities satisfactorily." Id. Based on her interpretation of these two provisions, Plaintiff argues that the NYS Defendants could have granted her scheduling accommodation without violating the CBA. Id. Plaintiff's interpretation of the CBA is the also the basis for her argument that OPWDD's policy to not to permit permanent voluntary shift-swapping was allegedly discriminatory. Id.

Plaintiff's interpretation, however, is contradicted by both: (i) the plain text of the CBA; and (ii) the way OPWDD and CSEA, the parties to the contract, believed it should be interpreted. The Court should read the plain language of the CBA using standard principles of contract interpretation and reject Plaintiff's incorrect legal theories.

2

### A.    Plaintiff's Interpretation of the CBA Violates Standard Principles of Contract Interpretation

Plaintiff argues that the CBA allows the NYS Defendants to grant her request for a permanent scheduling accommodation without violating the seniority provisions of the contract, but this argument is contrary to the plain language of the CBA. See CBA §§ 44.2, 45.1, & 45.2. The relevant seniority provision of the CBA states that "appointments and promotions to vacant positions in the non-competitive service or assignment of employees to work locations and shifts shall be made on the basis of seniority, subject to the operating needs of a department or agency or component thereof, or subject to an identification of differences between employees with respect to relevant factors concerning the employee's ability to perform the required duties and responsibilities satisfactorily." CBA § 44.2.[1]

Plaintiff argues that this provision permits OPWDD to *ignore* the seniority provisions when an employee requests a permanent shift change because "[t]he need to make a religious accommodation could constitute an operating need, or it could constitute a factor concerning [Plaintiff's] ability to perform required duties." Pl. Opp. MOL, pp. 5 & 14. This interpretation of the CBA defies the plain meaning of the contractual terms. The plain meaning of the "operating needs" clause is that OPWDD must determine the scope of its need for employees in various roles and geographic areas and then appoint such staff *according to seniority*. Furthermore, the "ability to perform" plainly pertains to an employee's skills, licensure, and physical abilities. For example, if OPWDD determines that an employee with a nursing license is necessary, then the most senior person who matches those requirements is chosen in accordance with the CBA. In

---

[1] The CBA also includes the same language in the sections governing posting vacancies. See CBA §§ 45.1, 45.2. The NYS Defendants' arguments regarding the meaning of the language in CBA § 44.2 also apply to CBA § 45.1 and § 45.2.

3

contrast, Plaintiff's illogical interpretation is that the words "operating needs" and "ability to perform" are catch-all exceptions that would allow OPWDD to unilaterally choose when to follow the seniority provisions and when to ignore them. Under Plaintiff's interpretation, OPWDD could give desirable shifts or pass days to junior union members—simply by vaguely citing "operating needs" or an employee's "ability to perform the required duties." Plaintiff's proposed exception would swallow the rule and is clearly unsupported by the plain language of these provisions.

Under New York Law, the fundamental, neutral principle of contract interpretation is that agreements are construed in accord with the parties' intent and the intent of the parties is derived from the language employed by the parties. See Greenfield v. Philles Recs., Inc., 98 N.Y.2d 562, 569 (2002) (long-settled common-law contract rules govern the interpretation of agreements); see also Tom Doherty Assocs. Inc. v. Saban Entm't Inc., 869 F. Supp. 1130, 1137 (S.D.N.Y. 1994). Collective bargaining agreements are generally interpreted in accordance with the ordinary principles of contract law. See, e.g., CNH Indus. N.V. v. Reese, 583 U.S. 133, 135 (2018). The most logical and plain reading of the language in the CBA is that OPWDD must assign roles by seniority within the context of the populations, roles, and geographic areas that it serves.

New York courts also disfavor exclusions that "swallow the policy." See, e.g., Clear Blue Specialty Ins. Co. v. TFS NY, Inc., 690 F. Supp. 3d 138, 145 (E.D.N.Y. 2023). Plaintiff argues that the "operating needs" or the "ability to perform" clauses of the CBA can both be used to freely circumvent seniority rules. This interpretation of the CBA is so nebulous and broad that it would effectively require OPWDD to allow any junior employee to bypass the seniority

4

provisions at any time. The Court cannot adopt this reading because it would make the seniority provisions meaningless and violate a primary rule of contract interpretation.

Finally, because contract interpretation "is generally a question of law, it is suitable for disposition on a motion to dismiss." Reinhardt v. Wal–Mart Stores, Inc., 547 F.Supp.2d 346, 353 (S.D.N.Y. 2008). Here, there is no question of fact: there is no ambiguity on the face of the contract, the contents of which are incorporated into the Complaint by reference, and Plaintiff's proposed interpretation is not reasonable. Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs., Inc., 515 F. Supp. 2d 298, 310-11 (N.D.N.Y. 2007).

### B. Plaintiff Has Not Plausibly Alleged a Practice of Freely Granting Exceptions to CBA Seniority Provisions

Plaintiff also alleges that OPWDD had a practice of applying the CBA's seniority provisions in a flexible manner that would regularly permit shift swaps upon request. Pl. Opp. MOL, pp. 14-15 & 26-27. Plaintiff makes this assertion based on allegations that (i) OPWDD approved four voluntary shift swaps for Plaintiff during her tenure, (ii) OPWDD has a large workforce, and it therefore likely receives many reasonable accommodation requests, and (iii) CSEA told Plaintiff that OPWDD supervisors could approve "60 work adjustments." Id. Even when viewed together, these allegations are insufficient to create a plausible inference that OPWDD had the ability to ignore the seniority provisions of the CBA.

First, Plaintiff has not plausibly alleged that OPWDD had a practice of approving *permanent* voluntary shift swaps. The *only* basis for this argument is Plaintiff's allegation that the NYS Defendants approved four requests she submitted for voluntary shift swaps, on a *temporary* basis. Id. But the Amended Complaint concedes that once it became clear that Plaintiff intended to continue to request shift swaps indefinitely, which would effectively jump the seniority system, OPWDD denied her request. Amend. Compl., ¶¶ 95, 106.

Second, Plaintiff contends that the NYS Defendants had "a practice of making non-religious work adjustments." Pl. Opp. MOL, pp. 26-27. This allegation is based entirely on conjecture. Plaintiff has not identified a *single* employee who received a non-religious work adjustment. Rather, Plaintiff speculates that, since OPWDD employs a lot of people in a large geographic area, then there *must* be secular employees who requested and received accommodations, while religious employees did not. Id. Plaintiff's statement that "on information and belief" OPWDD granted exceptions to seniority provisions for "other employees for non-religious reasons" is so conclusory and lacking in detail that it cannot defeat a motion to dismiss. Amend. Compl., ¶¶ 73-75.

Third, Plaintiff states that CSEA's Vice President told her that she "had the right to 60 days of work adjustments." Pl. Opp. MOL, p. 14. This contention is so unclear that it impossible to fully address. Plaintiff does not explain what "work adjustments" she is referring to and whether they differ in any way from shift swaps. She also fails to explain the meaning of "60 days." Sixty days could mean 60 consecutive days when Plaintiff could use adjustments, or it could mean 60 days on which adjustments or swaps could be used. In any event, this statement on its face does not support the contention that CSEA believed OPWDD could permit a *permanent* work adjustment that would have the effect of waiving the seniority rule. This vague allegation does not plausibly support Plaintiff's allegation that the NYS Defendants had a policy of permitting permanent shift-swapping in violation of the CBA's seniority provision.

## II.    GIVEN THE CBA'S PROPER INTERPRETATION, THE COMPLAINT DOES NOT PLAUSIBLY STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff's erroneous interpretation of the CBA is the entire premise for her legal arguments that: (i) the NYS Defendants were free to disregard the CBA's seniority provisions

and therefore were required by law to grant her a scheduling accommodation under Title VII; (ii) the NYS Defendants displayed discriminatory animus by habitually granting scheduling accommodations for secular reasons but denying those same accommodations for religious reasons; and (iii) the CBA is not a "bona fide, neutrally applicable" contract and should therefore be analyzed under a strict scrutiny standard for the purposes of assessing Plaintiff's allegations under § 1983. Pl. Opp. MOL, pp. 13-17 & 30-34. Each of these arguments fails when the correct reading of the CBA language is applied.

### A.    Plaintiff Has Failed to State a Claim under Title VII

#### i.    *Granting Plaintiff's Accommodation Would Have Required the NYS Defendants to Violate a Rigid Seniority Rule*

Under the plain language of the CBA and OPWDD's workplace policies, the NYS Defendants could not have granted Plaintiff's request for a permanent shift change without violating the seniority provisions of its CBA. Plaintiff concedes that Transworld Airlines, Inc. v. Hardison, 432 U.S. 63 (1977) "forbids . . . requiring an employer to *violate* a rigid seniority rule." Pl. Opp. MOL at p. 16 (emphasis in original). But Plaintiff argues that Hardison does not apply because "[g]ranting an accommodation here would not violate the seniority plan because the plan had exceptions," based on Plaintiff's reading of the contract language. Id. But Plaintiff's reading is incorrect. Here, just as in Hardison, the CBA plainly does not permit junior employees to demand permanent shift swaps in violation of the seniority provision.

Plaintiff cites several Circuit Court cases that are distinguishable because they involve situations where the employer did not have to violate CBA seniority provisions to grant an accommodation, or where the employer already had a policy in place for granting similar accommodations. See, e.g., Antoine v. First Student, Inc., 713 F.3d 824 (5th Cir. 2013) (CBA contained provision under which any route vacated by a driver was advertised to other drivers by

the employer itself and the employer offered to facilitate voluntary swaps); Sturgill v. United Parcel Service, Inc., 512 F.3d 1024 (8th Cir. 2008) (affirming a jury verdict where testimony about CBA provisions was inconsistent and where plaintiff's manager regularly offered split shifts to him and other employees).[2] By contrast, Plaintiff's own allegations show that OPWDD made it clear throughout Plaintiff's employment that OPWDD could not make a permanent exception to the seniority provisions of the CBA. In fact, the Amended Complaint demonstrates that OPWDD did not in fact have a policy for freely allowing employees to permanently swap shifts. See Amend. Compl., ¶¶ 94-96 & 106. OPWDD allowed Plaintiff just four shift swaps before declining to approve any further swaps. Id. When Plaintiff asked for a permanent shift swap, OPWDD denied her request. Id.

Plaintiff relies heavily on the Supreme Court's decision in Groff v. DeJoy, 600 U.S. 447 (2023), but that case does not change the analysis here. In Groff, the Court clarified the definition of "undue hardship," but did not question Hardison's holding regarding seniority rights. On the contrary, the Court confirmed that "[t]he Hardison Court was very clear that [transgressing seniority] rights [was] off limits." Id. at 465.

Plaintiff also incorrectly contends that the NYS Defendants "stretch the ruling in [Hardison] beyond its facts and holding." Pl. Opp. MOL, pp. 13-14. This argument ignores the significant time and space that the Supreme Court devoted to laying out its reasoning for ruling in the employer's favor in a unionized workplace context. Writing for the Court, Justice White

---

[2] EEOC v. Hacienda Hotel, 881 F.2d 1504, 1513 (9th Cir. 1989), is also distinguishable. There, the trial court determined that the employer did nothing to solve the incompatibility between the religious employees and their schedules; instead, the employer "essentially used the seniority provision of the collective-bargaining agreement as a shield against its statutory obligation to reasonably accommodate its employees' religious needs." In contrast, the NYS Defendants investigated options under which they could grant Plaintiff's accommodation request without violating the CBA, they just couldn't find any. Amend. Compl., ¶¶ 76, 92.

wrote that "[c]ollective bargaining, aimed at effecting workable and enforceable agreements between management and labor, lies at the core of our national labor policy, and seniority provisions are universally included in these contracts." <u>Hardison</u>, 432 U.S. at 79.

It is notable that the Supreme Court in <u>Hardison</u> overruled a lower court decision finding that TWA could have accommodated Hardison, the employee seeking a religious accommodation, by arranging shift swaps between himself and other employees for either different days or shifts." <u>Id.</u> at pp. 64 & 77-78. The Court rejected that reasoning: "[T]he court of appeals' conclusion that TWA was not limited by the terms of the seniority system was in substance nothing more than a ruling that operation of a seniority system was itself an unlawful employment practice even though no discriminatory purpose had been shown." <u>Id.</u> The same conclusion applies here.

Finally, it is important to note that neither voluntary shift swaps nor "work adjustments" would have solved the incompatibility between Plaintiff's requested accommodation and OPWDD's scheduling needs. Even if OPWDD had granted Plaintiff permission to swap shifts on a regular basis, she would still have been required to work during the Sabbath on occasions when a volunteer could not be found or when the union-authorized period of "work adjustments" expired. <u>See</u> <u>Baker v. The Home Depot</u>, 445 F.3d 541, 548 (2d Cir. 2006) (holding that the "offered accommodation cannot be considered reasonable because it did not eliminate the conflict between the employment requirement and the religious practice") (internal quotation omitted).

     *ii.*     *Plaintiff Has Not Plausibly Alleged Discriminatory*
           *Motive Because her Allegations that Secular Employees*
           <u>*Received Accommodations are Conclusory*</u>

In her Opposition, Plaintiff asserts that (i) CSEA's alleged statements that OPWDD supervisors could approve "60 work adjustments" and (ii) OPWDD's approval of four shift swaps, combined with (iii) OPWDD's large work force, gives rise to a reasonable inference that the NYS Defendants must have approved work adjustments for secular employees, while denying Plaintiff' own request for a religious accommodation. Plaintiff argues that this set of alleged facts shows that the NYS Defendants had discriminatory motive.[3]

As argued in Section I.B, *supra*, even when considered together, Plaintiff's vague allegations do not plausibly allege that OPWDD applied the CBA's seniority provisions in a discriminatory manner. Plaintiff has simply failed to allege sufficient facts to make her claim plausible.

Plaintiff cites <u>Sughrim v. New York</u>, 503 F. Supp. 3d 68, 96–97 (S.D.N.Y. 2020) in support of her argument. But the fact pattern in that case is distinguishable. In <u>Sughrim</u>, the plaintiff corrections officers specifically identified similarly situated employees who held the same positions as plaintiffs, were also corrections officers, and who wore beards for non-religious reasons without facing discipline. <u>Id.</u> By contrast, in the Amended Complaint, Plaintiff vaguely speculates that the NYS Defendants likely adjusted the work schedules of unnamed

---

[3] Plaintiff's arguments that Defendant Teresa Meadows' remarks lead to a plausible inference of discriminatory motive are also insufficient to save the Amended Complaint. Pl. Opp. MOL, p. 23. The pleadings show that Ms. Meadows was not in a decision-making role: in situations where an employment decision needed to be made, Ms. Meadows had to either get approval from other individuals at OPWDD or she had to elevate the decision-making process entirely to others. Plaintiff alleges that when OPWDD was considering Plaintiff's request for a reasonable accommodation shortly after September 18, 2023, "Ms. Meadows forwarded the [request] to her supervisor," who then elevated the request even farther. Amend. Comp., ¶¶ 58-60. There is no allegation that Ms. Meadows participated in the ultimate decision.

"other employees for non-religious reasons." Amend. Compl., ¶¶ 73-74. Plaintiff does not allege whether these hypothetical secular employees were in the same position as her, or whether they were even bound by the collective bargaining agreement. Id.; see also Blige v. City Univ. of New York, No. 15-cv-08873 (GBD) (KHP), 2017 WL 498580, at *10 (S.D.N.Y. Jan. 19, 2017) (finding that plaintiffs failed to allege discriminatory motive in part because it was not clear whether the other employees were in the same position as him and whether they were subject to the same CBA disciplinary provisions). Furthermore, the Sughrim plaintiffs could readily identify other corrections officers who wore beards simply by looking at other staff. By contrast, Plaintiff concedes that she does not actually know whether any other secular or religious OPWDD employees received scheduling adjustments. She asks the Court to infer that such comparable employees must exist simply from the fact that OPWDD employs many people and has allegedly received "a lot" of reasonable accommodation requests. See Amend. Compl., ¶¶ 84-88 & 121. These vague musings are insufficient to state a claim for relief.

> **B.      Plaintiff Failed to State a Claim under § 1983 Because Rational Basis Review Applies to the Analysis of Plaintiff's Constitutional Claims Against the NYS Defendants**

Plaintiff's defense of her constitutional claims likewise rests on her incorrect interpretation of the CBA. Plaintiff concedes that when the government seeks to enforce a policy of neutral and general applicability, it need only demonstrate a rational basis. Pl. Opp. MOL, pp. 31-33. But Plaintiff argues that, because the CBA's seniority provision is allegedly subject to an exception that permits OPWDD to ignore its plain terms, the CBA must therefore be analyzed using a strict scrutiny test, under which the CBA must be narrowly tailored to serve a compelling government interest. Id. However, as described in greater detail in Section I, *supra*, Plaintiff's assertions are based on an incorrect interpretation of the plain language of the CBA. The plain

11

terms of the CBA show that it is a neutral, generally applicable policy. Therefore, rational basis review applies. See NYS Defs. MOL, p. 32.

### III.    PLAINTIFF'S OTHER ARGUMENTS FAIL

#### A.    Plaintiff Has Failed to State a Claim for Title VII Retaliation

Plaintiff has not plausibly alleged that the NYS Defendants retaliated against her by terminating her because she filed an administrative complaint. First, Plaintiff concedes that "defendants fired [her] for frequent call-outs"—*not* because she filed an administrative complaint. Pl. Opp. MOL, p. 29. The Amended Complaint plainly shows that Plaintiff was terminated because she declined to work her assigned shifts after her request for a permanent shift swap was denied. Amend. Compl., ¶¶ 55-57, 95.

Second, Plaintiff argues that the timing of her termination vis-a-vis her administrative complaint is sufficient to support a finding of causation for her retaliation claim. This argument misapplies principles set forth by the Second Circuit. In Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty., 252 F.3d 545 (2d Cir. 2001), the court found that a five-month gap is not too long, but only given the context that the plaintiffs "provided evidence of exercises of free speech and subsequent retaliatory actions occurring" within that five-month period. Id. at 555. Plaintiff simply ignores precedent, cited by the NYS Defendants, showing that *without* such additional evidence, even a three-month gap "prohibits an inference of causation." Nadel v. Shinseki, 57 F. Supp. 3d 288, 299 (S.D.N.Y. 2024). Here, given that Plaintiff has not alleged any additional evidence supporting causation, and because Plaintiff was only employed for a total of ten months, a five-month gap does not create a plausible inference of causation.

12

**B.    Plaintiff's NYSHRL and NYCHRL Claims Also
Fail Under the Correct Interpretation of the CBA**

None of Plaintiff's arguments in opposition to the motion to dismiss save the NYSHRL

and the NYCHRL claims. First, the NYS Defendants are protected by sovereign immunity

because the allegations in the Amended Complaint do not show that individuals had discretion to

ignore the CBA seniority provision. Second, Plaintiff's claims of discrimination, retaliation, and

failure to accommodate do not survive, even under a more lenient pleading standard, because

Plaintiff's interpretation of the CBA's seniority provisions are incorrect. See Sections I & II,

*supra*.

In addition, Plaintiff does not allege that the individual defendants made the final

decision to deny Plaintiff's accommodation request or terminate her, and they therefore do not

meet the definition of "employer."

**IV.    ALTERNATIVELY, THE COURT SHOULD STRIKE PLAINTIFF'S
ALLEGATIONS PERTAINING TO A PURPORTED CLASS**

**A.    Second Circuit Courts Strike Conclusory
Class Allegations, Like Those in the Amended
Complaint, Under *Iqbal* and *Twombly***

The Amended Complaint does not plausibly allege the existence of a class of similarly

situated plaintiffs. Plaintiff initially opposes the NYS Defendants' motion to strike the

conclusory class allegations by challenging the legal standard. Specifically, she argues that she

need not plausibly allege the existence of a class because Second Circuit courts are supposedly

"divided on whether to apply Twombly and Iqbal to the pleading of affirmative defenses,

including motions to strike." Pl.'s Opp. MOL, p. 42. Plaintiff is incorrect. In support of this

argument, she cites Aros v. United Rentals, Inc., No. 10-cv-73, 2011 WL 5238829 (D. Ct. Oct.

31, 2011), and Lane v. Page, 272 F.R.D. 581 (D.N.M. 2011). Plaintiff's reliance on these cases is

13

misplaced, as both cases concern motions to strike *affirmative defenses*. Aros, 2011 WL 5238829, at *2; Lane, 272 F.R.D. at 589, n.5 & 590, n.6. No part of the NYS Defendants' motion requests that affirmative defenses be stricken, so neither of these considerations apply here.

The NYS Defendants instead move to strike the conclusory class allegations of the Amended Complaint. Courts in the Second Circuit readily grant precisely this type of motion if a plaintiff has failed to plausibly allege the existence of a class with specific, non-conclusory allegations. See, e.g., Borgese v. Baby Brezza Enters. LLC, No 20-cv-1180, 2021 WL 634722, at *6 (S.D.N.Y. Feb. 18, 2021) (granting the defendants' motion to strike the conclusory class allegations because, without more, the complaint did not establish a plausible entitlement to class certification); PFT of Am., Inc. v. Tradewell, Inc., No. 98-cv-6413, 1999 WL 179358, at **1-2 (S.D.N.Y. Mar. 31, 1999) (same); Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 97-cv-8779, 1998 WL 321446, at *9 (S.D.N.Y. June 18, 1998) (same). Though Borgese, PFT, or Goldberg do not directly cite Twombly or Iqbal, they rely upon the "plausibility" standard set forth in those cases as a basis to strike class action allegations.

The class allegations in the Amended Complaint similarly fail to meet the "plausibility" standard. Plaintiff relies on vague and conclusory statements regarding the existence of "Confidential Witness 1," the only other alleged class member. See Amend. Compl., ¶ 119. Even after being put on notice of the deficiencies in the purported class allegations, Plaintiff's opposition brief fails to provide any further specifics about the alleged class. Instead, Plaintiff argues that the class claims should survive based on her speculation that discovery could possibly uncover evidence of other class members. Pl. Opp. MOL, pp. 43-44 (speculating that a vague alleged comment "*suggests* that there were other instances in which the Union denied sabbath accommodations" and that "discovery will *likely* uncover many more members of the

14

class") (emphases added)). But this gets the timing backwards: Plaintiff may only obtain discovery on class action claims if she has first plausibly alleged the existence of a class. That prerequisite is entirely lacking here. Because Plaintiff's class action claims fall short of the pleading standard, an order striking the class allegations is warranted here.

### B.    Plaintiff Has Not Properly Pled Commonality or Typicality

In opposition to the NYS Defendants' contention that the Amended Complaint falls short of the commonality and typicality pleading requirements, Plaintiff essentially argues that pre-answer motions to strike are disfavored. Id., p. 45. While that may be true as a general matter, Plaintiff fails to point out that such a motion may be entertained—and granted—if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear from the face of the complaint. Kassman v. KPMG LLP, 925 F.Supp.2d 453, 462 (S.D.N.Y. 2013). These conditions are met here.

First, the purported class lacks commonality because the result here is the same as that in Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 353 (2011). Plaintiff's own allegations show that OPWDD's response to her accommodation request was dependent on a highly individualized, fact-specific assessment about what options were available to Plaintiff, consistent with OPWDD's obligations under the CBA and its seniority provision. This included an assessment of Plaintiff's seniority, her job duties, other positions available for which Plaintiff was eligible, and the availability of a CSEA waiver. See NYS Defs. MOL, p. 40-41. The same assessment would apply to each other purported class member. Because this analysis is necessarily individualized, Wal-Mart precludes class certification under these facts.[4]

---

[4] Plaintiff claims, incorrectly, that the NYS Defendants' arguments regarding commonality conflict with their Rule 12 argument because they demonstrate that OPWDD "easily could have accommodated [Plaintiff] without violating the seniority plan, and without causing undue

Second, the purported class lacks typicality. The highly individualized, fact-specific narrative set forth by Plaintiff in her Amended Complaint compels this result. The NYS Defendants analyzed the detailed course of events underlying Plaintiff's claims, which would not be the same for any other OPWDD employee. See NYS Defs. MOL, pp. 40-42. The parties need not engage in discovery to reach this conclusion.

More importantly, Plaintiff's claims are subject to unique defenses that would render her atypical. Because Plaintiff was an entry-level new hire at OPWDD, the scope of possible defenses that the NYS Defendants can assert against Plaintiff is undoubtedly wider than the scope of defense applicable to other class members. For example, the Complaint concedes that NYS Defendants were unable to accommodate Plaintiff's religious accommodation request by switching her to another role with her preferred schedule because she was simply unqualified for some positions, and because she had not achieved the requisite seniority to be considered for the positions. See, e.g., Brown v. Kelly, 609 F.3d 467, 480-81 (2d Cir. 2010) (vacating the portion of the order certifying one class because the differing defenses among class members did not support a finding of typicality).

---

hardship." Pl. Opp. MOL, p. 46. Plaintiff misunderstands the argument. OPWDD staff had discretion to individually assess Plaintiff's accommodation request and attempt to find some accommodation that would permit Plaintiff to avoid work on the Sabbath, *consistent with OPWDD's obligations under the CBA and its seniority provision*. That is exactly what OPWDD staff did when presented with Plaintiff's request, and no suitable accommodation was identified. The purported class lacks commonality because, pursuant to the CBA, OPWDD's response to each class member's request for an accommodation is necessarily subject to a similar series of individualized decisions. But the NYS Defendants have *never* argued that OPWDD had discretion to simply ignore the plain terms of the CBA's seniority provision and grant each employee's request for a permanent shift swap, as Plaintiff suggests.

16

## CONCLUSION

For the foregoing reasons, the NYS Defendants respectfully request that the Court grant their Motion to Dismiss and Strike, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 12, 2025

                                  Respectfully submitted,

                                  LETITIA JAMES
                                  Attorney General of the
                                  State of New York
                                  Attorneys for the NYS Defendants
                                  By:

                                  *Caroline P. Wallitt*
                                  Elizabeth Filatova
                                  Caroline Wallitt
                                  Assistant Attorneys General
                                  28 Liberty Street
                                  New York, New York 10005
                                  (212) 416-8523

17

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)</u>

Pursuant to Local Civil Rule 7.1(c) of the Joint Local Rules of the Southern and Eastern

Districts of New York (the "Local Rules") and Section 4(A) of the Individual Rules & Practices

in Civil Cases of Ronnie Abrams, United States District Judge, I certify that this document

complies with the length limitations of Judge Abrams' Order, dated September 9, 2025. Based

upon a count of the words as set forth in the Local Rules, this document contains 4,982 words

(fewer than the 5,000 words permitted by the Order).

Dated:  New York, New York
        September 12, 2025

*Caroline P. Wallitt*

_____

Caroline P. Wallitt